13 269
48 398

## SOSTHENE THOMAS *v.* SHIP MORNING GLORY AND OWNERS.

The common carrier, under the commercial law, is answerable for all losses that do not fall within the excepted cases of the act of God (perils of the seas,) or of public enemies, but he may limit his responsibility by special notice of the liability he means to assume, so that the shipper will be bound to prove negligence or fault in the carrier in case of loss or damage in the goods shipped.

APPEAL from the Fourth District Court of New Orleans, *Reynolds*, J. *Hunt & Denegre*, for plaintiff and appellant. *Singleton & Clack*, for defendant.

BUCHANAN, J. Plaintiff claims of defendants for loss, occasioned by leakage, upon a shipment of Brandies per ship Morning Glory, from Bordeaux to New Orleans. The shipment consisted of twenty-five half pipes, twenty-five quarter pipes, and other packages.

On the arrival of the ship at her port of destination, and the unloading of her cargo, it was found that three of the half pipes, mentioned in the bill of lading, were entirely empty, and a quarter pipe partially so. The witnesses are of opinion that these casks were crushed by the pressure of cargo.

The defence is put upon two grounds:

1st. That the bill of lading contained the following clause: "Not accountable for leakage."

2d. That by the custom of the port of Bordeaux, which was observed in the case of this ship, the stowage of the cargo was done by stevedores employed and paid by the shippers of the cargo.

1. The common carrier, under the commercial law, is answerable for all losses that do not fall within the excepted cases of the act of God (perils of the seas) or of public enemies. But the tendency of the more modern decisions has been to permit the carrier to limit his responsibility by special notice of the extent of the liability which he means to assume. The goods, in that case, says Chancellor Kent, (Comm's, lecture 40,) are understood to be delivered on the footing of a special contract. Story on Bailments, § 549. Angell on Carriers, § 220.

In conformity with these authorities, under a clause in a bill of lading, "not accountable for leakage," it was lately held by Mr. Justice Campbell, sitting in the Circuit Court of the United States in this city, that the shipper was bound to prove negligence or fault in the carrier, before he could recover the value of certain glass show cases, conveyed on freight from Philadelphia to this port, and delivered broken. Case of *Merryman* v. *Brig May Queen.*

The doctrine thus sanctioned by precedent seems conformable to the general principle, that in whatever manner a man has bound himself towards another, he shall remain bound. The clause in the bill of lading limiting the responsibility of the carrier, is not to be understood as having exempted him from liability for leakage occasioned by the fault or negligence of himself or his agents; but as throwing upon the bailor the burden of proof of such fault or negligence, as a prerequisite to recovery under the contract. *New Jersey Steam Nav. Co.* v. *Merchants' Bank*, 6 Howard, 384.

The fault which is imputed to the ship in argument, is bad stowage of cargo, causing an undue pressure upon the casks in the lower tier. The proof of bad stowage is not satisfactory. The Morning Glory was a very large ship, of upwards of 1100 tons burden. Her cargo consisted of 2519 casks of wine and brandy. The casks in her lower hold were stowed six or seven tiers deep, upon a bed of ballast, and properly dunnaged. The ship experienced very rough weather on her passage from Bordeaux to New Orleans, with a very heavy head sea, causing her to pitch, bows under. Her cargo does not appear to have shifted, but some of the quoins worked out from between the casks. The port-warden, *McCerren*, an experienced seaman, gives it as his opinion that the loss by leakage was smaller, in proportion to the size of the cargo, than is usual in ships from Bordeaux.

II. The second ground taken, is that the ship is not liable in this instance for the stowage of the cargo, admitting it to have been defective; because, by the custom of the port of Bordeaux, the charterer of the vessel, or the broker who procures the cargo, acting for the shippers, has a recognized right to employ the stevedore who loads the ship.

The proof of this custom is entirely conclusive. It appears from the testimony of many shipmasters in the Bordeaux trade, that the right of the shipper, or his agent the ship broker, to employ his own stevedore to load the cargo, has been sustained, in spite of the opposition of masters of American vessels, in that port. It is also proved that the Morning Glory was loaded on this voyage by a stevedore employed by the shippers of the cargo. This evidence may afford an additional reason for the insertion of the clause of limitation of the carrier's responsibility, which we find in the bill of lading. As the carrier had no control of the loading of his ship, it seems but natural that he should stipulate not to be liable for the fault or incompetency of the person who loaded her; and which person was, in truth, the servant or agent of the opposite party in the contract of affreightment.

Judgment affirmed, with costs.

Merrick, C. J., concurring. The loss of the wine and brandies, I think, was attributable to the stowage.

The plaintiff having himself employed such agents for the stowage of his goods, as are required by the requisitions of the authorities at the port of Bordeaux, and having accepted a bill of lading expressly exempting the carrier from responsibility on account of leakage, cannot, in my opinion, recover, it being shown, as just mentioned, that the loss was occasioned by the stowage. On this ground I concur in the decree.

Cole, J., concurring. I concur in the conclusion of Mr. Justice Buchanan on the second ground assumed by him, but not on the first, on account of the peculiar circumstances of the case at bar.

I consider that the clause in the bill of lading, " not accountable for leakage," does not justify the common carrier in the delivery of empty casks, and put the *onus probandi* on the consignee; it does not mean " not accountable for empty casks." In my opinion the clause signifies that the vessel is not liable for ordinary leakage; but it does not mean, that if the casks are broken by unskilful stowage, and the whole of the wine lost, that the ship will not be responsible. The ordinary signification of leakage is the loss of a part, but not of the whole. I admit the common carrier may limit his responsibility, but then it must be in clear and well defined terms; for this limitation is an exception to the general rule, and a waiver of the provisions of law in favor of the owner of the merchandize shipped.

In one of the cases at bar, some sixteen casks of claret were broken through and entirely empty.

I admit that, for ordinary leakage, the vessel, under the clause, can put the burden of proof on the owner of the goods.

I do not consider the case of *Merriman* v. *Brig May Queen*, as applicable to that at bar. The articles shipped in that suit were " glass counter show cases," and the restriction in the bill of lading was : " Goods to be receipted for on the levee; not accountable for rust, breakage, leakage, cooperage; weights and contents unknown." It does not appear that these " show cases " were smashed; it may be that they were only cracked, and then the clause in the bill would have protected the ship. The decision of Mr. Justice Campbell would perhaps have been different, if it had been established that the " show cases " had been entirely crushed by bad stowage.

Mr. Justice Campbell, in his opinion in that case, says : " The freight clerk who received the cases testifies, that the manufacturer made the freight engagement with him ; that he was informed that articles of the kind contained in the cases (glass counter show cases) would not be received except on the restriction of the liability, and that only the ordinary freight was charged. This evidence is supported by another witness and contradicted by none."

I do not contest the doctrine in *New Jersey Steam Nav. Co.* v. *Merchants' Bank*, but maintain that decision does not controvert the principle that, a common carrier cannot be released beyond the extent of the limitation in the bill of lading. In the case at bar, the common carrier could have inserted in the bill that he would not be responsible for the delivery of the wine ; then he could not have been held liable for the delivery of empty casks. But when he binds himself not to be responsible for leakage, he is bound to deliver the quantity of wine in the casks less that lost by ordinary leakage. The burden of proof would not be upon him for ordinary leakage, under the limitation of leakage in the bill, but if under

THOMAS
*v.*
SP MORNINGGLORY

this restriction, the casks are empty, then the burden of proof, as a general rule, would be upon him.

It is alleged that the loss by leakage was smaller in proportion to the size of the cargo, than is usual in ships from Bordeaux.

I consider that one of the owners cannot be forced to suffer the loss of leakage for the whole cargo. If it had been proved that the leakage on the casks of the plaintiff was not more than usual, then the ship would not have been liable, but it cannot justify the delivery of empty casks to one of the shippers because his particular loss was not more than the customary leakage of the whole cargo.