WILLIAM PETERS *v.* THE NEW ORLEANS, JACKSON & GREAT NORTHERN RAIL ROAD COMPANY.

The defendant undertook to transport for the plaintiff a car-load of live stock. It was bound to furnish a suitable and safe car, and it is responsible for any loss arising from neglect of duty in this particular. The mere presence of the owner did not lessen this responsibility if he had no power over the train, nor right to make any change in the disposition of the cars, which were necessarily under the control of the agents of the Company.

APPEAL from the Sixth District Court of New Orleans, *Howell, J.*

H. Duncan and P. Childress, for plaintiff. Michel & Koontz, for defendants and appellants.

MERRICK, C. J. This suit is brought to recover damages for the loss of forty-four head of horned cattle killed by being deprived of air in a closed car during their transportation from Amite city to New Orleans on the rail road of defendants.

It appears that the Rail Road company have open cars made expressly for transportation of cattle. They also occasionally carry them in what are called box-cars, but it is customary to leave the doors of such cars open and to secure the openings so made by nailing slats across the same.

The company carry cattle for so much per head ; if the consignor or owner prefer, they hire the car at so much per trip. If the latter mode, (which is the least expensive) is adopted by the owner, he has permission to put on the car as many cattle as he can, provided it be not, in the opinion of the conductor, overloaded, and he travels passage free in order to take care of the cattle.

The day before the cattle were shipped, the agent at Amite City sent to the master of transportation in New Orleans for cars for their transportation. Instead of sending cattle cars, box-cars were sent to Amite city for that purpose.

The plaintiff's cattle, by the assistance of his hands and those belonging to the defendants, were put in a box-car on the day they were to be brought to New Orleans. The plaintiff offered to nail slats across the openings of the doors, but the agent of the company objected to the same, as he said, for want of time. Some discussion then took place 'as to the danger of shutting the doors of the cars, but the agent being of the opinion that the cattle could go safely to the next station, locked the doors, and instructed the conductor to open the car at the next station and give the cattle air or they would die. When the train arrived at Tickfaw, the next station, no key could be found with which to open the doors; and it proceeded to Ponchatoula. Here, according to plaintiff's witness, (to whose testimony credence was given by the District Judge) an attempt was made to force open the doors of the car with a bar of iron in order to admit air, but after one or two unsuccessful efforts, it was abandoned.

The conductor says he offered to some one of those shipping cattle that trip to put out those in the box-car at this station, and bring them to the city the next day, but his offer was refused.

He also says a consultation was held at Frenier, forty-eight miles distance from Amite city, he thinks, with the plaintiff and a *Mr. Woods*, and it was concluded not to open the car. At this time he says, judging from the noise, the cattle were " full of life." But he is partially contradicted by the witnesses *Woods* and *Adams*, who say that the cattle seemed to be dead at Ponchatoula, and they heard no noise from them afterwards.

On the arrival of the train in the city, the car was opened by an agent of the company and the cattle were found dead, with the exception of three or four calves.

It was contended in the lower court that the plaintiff was the charterer of the car, and having a right to load the car in his own way, was subject to the risk of all accidents to his property while being transported by the company.

It appears to us, however, that the defendant stood in the relation of the common carrier to the plaintiff, except so far as that relationship had been modi-fied by the agreement in this case.

The defendant undertook to transport for the plaintiff, a car load of live stock, for the sum of $22 50 freight. The company was bound to furnish a suitable and safe car, and it is responsible for any loss arising from the neglect of duty in this particular, and the mere presence of the owner does not lessen this respon-sibility, for he had no power over the train, no right to make any change. in the disposition of the cars which were necessarily under the control of the agents of the company. See 1 Parsons on Maritime Law, 122. Angell on Carriers, Nos. 161, 162, 165.

The proof shows that the plaintiff offered to nail slats across the doors, but, the privilege was refused him. There can, therefore, be no pretence for the assertion that the plaintiff assumed the risk of the transportation of his cattle in the box-car. No such agreement has been proved.

It is, therefore, ordered adjudged and decreed by the court, that the judgment of the lower court be affirmed, with costs.