## No. 9404.

### L. F. BERJE vs. TEXAS AND PACIFIC RAILWAY COMPANY.

A stipulation in a bill of lading of non-liability for loss from delays for any cause is unreasonable and will not relieve the carrier from liability for losses caused by negligence,

Putting in default is not necessary before suing for damages for an active violation of a contract, and unreasonable delay in transporting freight is an active violation of a contract for its transportation.

Obstructions and difficulties that might and ought to have been foreseen are not legal excuses or justifications for non-delivery, and damages are recoverable for losses actually sustained by reason of such non-delivery.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor*, J.

*Alfred Goldthwaite*, *H. Heidenhain* and *J. O. Nixon, Jr.*, for Plaintiff and Appellee.

*Kennard, Howe & Prentiss* for Defendant and Appellant.

The opinion of the Court was delivered by

MANNING, J.   The suit is for damages for delay in delivering cotton shipped from Shreveport and from several places in Texas.   The items are

(1)   Loss incurred in replacing 887 bales of cotton.........$1479 99
(2)   Expenses for re-classing, re-weighing, extra drayage, etc.,
      on cotton arriving in driblets on 849 bales............   296 11
(3)   Loss of market on 317 bales...........................   552 25
(4)   Loss of interest on capital invested...................   275 22
(5)   Loss on account of capital locked up..................  5000 00
                                                             ———————
      Total.................................................$7603 57

The judgment below was for $2,603.57—all the items except the last·

The cotton was delivered to the plaintiff at New Orleans in good order.   The claim is not therefore for any injury to it but simply for delay in its transportation, nor is the defendant charged with fraud or the like but merely with fault and negligence.   On the other hand the plaintiff is not seeking to recover hypothetical losses, except perhaps in the last item, but those actually incurred.

All the bills of lading are dated in October 1883.   The defence is that the bills contain the stipulation "that the carrier shall not be liable for loss or damage of any kind occasioned by delays from any cause," and that if liable the defendant has not been put *in mora*, and these were pleaded by way of exception.   For answer the defendant, confessing the bad condition of its road, declares its inability to have expedited the transportation of this cotton more than it did because of particular difficulties and hindrances which are thus summarized in the defendant's brief;—

1st. By the unusual and early maturing of the cotton crop producing a pressure of shipments.

2d. By low water in *Red River* throwing on its railroads an unusual pressure of shipments.

3d. By the extraordinary condition of the ATCHAFALAYA RIVER, its unusual widening, deepening, rise and fall, and interference with the road.

4th. By the unavoidable condition of a new railroad on the alluvial soil of LOUISIANA.

5th. By the unusual condition of the MISSISSIPPI RIVER at New Orleans, and in other ways.

The first point seems not to be relied on as it need not be, since a clause stipulating non-liability for loss from delays from any cause has uniformly been held unreasonable, and the insertion of it in a bill of lading will not relieve the carrier from liability for losses occasioned by negligence. Addison's Contracts 780; Myers' Fed. Dec. 611, 626.

A strenuous argument is made for the need of putting the defendant in default before any recovery can be had, but that formality has been uniformly restricted to purely passive breaches of contract, and this court very early remarked the inutility and unwisdom of the requirement as applicable even to those breaches, Erwin v. Fenwick, 6 Mart. N. S. 230, and has uniformly refused to extend it beyond them. In Morton v. Pollard 9 La. 174 it was pungently said;—"this court is unacquainted with any rule of law which requires the party claiming damages for an injury sustained on account of the non-performance or defective performance of a contract for work and labour done to first put his adversary *in mora* before he can be permitted to prove his damages," and this was repeated in Nicholson v. Desobry 14 Ann. 81, and very recently in Levy v. Schwartz, 34 Ann. 211, and cases therein cited.

The breach of the contract in this case was active—a negligent delay in executing it, or a defective execution of it beyond the reasonable intendment of the parties when they made it, and a putting *in mora* was not necessary.

The first item of loss is for replacing the undelivered cotton by purchasing other in the market at an advance in price.

The plaintiff had a right to expect his cotton at or near a fixed time. His contracts with others were made on that expectation and when it was disappointed he had to go on the market and buy to replace that which the defendant had contracted to deliver. The item is not for prospective loss but actual—not for the loss of profits but for an outlay of money. The whole theory of damages is based on indemnity and the indemnity here asked is of money expended in buying cotton which the plaintiff would not have had to buy if the defendant had delivered his cotton in a reasonable time.

The second item is for extra expenses incurred in re-weighing, re-classing the cotton and extra drayage etc. by reason of its arriving in small quantities or driblets, in other words damages for negligent delivery. The item is proved.

The third is for loss of market upon 317 bales and the fourth for loss of interest which were allowed in Murrell vs. Dixey, 14 Ann. 298. The proof of both is complete, the interest having been actually paid and the loss of market undoubted.

The excuses of the defendant for the unreasonable and protracted delay in delivery can scarcely be seriously urged. The properties and characteristics of the alluvial soil of this State have not been changed. They existed from the beginning of its formation and will doubtless continue for centuries. They were the same when the defendant projected its road as they are now. The caving of the banks of our rivers is a continuing process confined to no season and always occurring on the subsidence of the waters. The difficulty at the Atchafalaya ought to have been foreseen by engineers and the delay it caused in constructing the bridge might not unreasonably have been anticipated. It is evident that the delay was greatly extended and prolonged by lack of the proper facilities for transporting trains across that river and the Mississippi, and the defendant should have taken those into account before receiving freight and engaging to deliver it at New Orleans. Hutchinson on Carriers § 292.

The evidence shews that the defendant had an inducement to transport other cotton in preference to that of the plaintiff, and develops a cause—perhaps the real and controlling cause—why the plaintiff's cotton was delayed. His cotton was consigned to New Orleans, but in the autumn of 1883 the defendant had made sundry contracts with ocean steamers running from New Orleans to various European ports to transport cotton thither, and had given through bills of lading from the points in Texas whence the cotton was shipped to these ports. Its obvious interest was to get the cotton thus put on through bills to New Orleans in time for these steamers and in order to do this, cotton not thus shipped had to be postponed to that on through bills. The rates of ocean freights rose at that time and the ocean steamers were glad of an excuse not to take the defendant's freight on through bills as they had contracted to do. The defendant therefore sacrificed the plaintiff's shipments because of its need to get the other cotton through in time to meet its own engagements with the steamers, and this clinches the argument that its violation of its contract with the plaintiff was active, as well as supplies the true motive of its dilatoriness in transporting his cotton.

Judgment affirmed.

### ON APPLICATION FOR REHEARING.

FENNER, J. Our general expressions on the subject of default have reference to the case to which they are applied, to-wit: to contracts of affreightment. As to these, it is well settled that "the carrier under-

takes to transport the goods, not only in good safety, but within a reasonable time," and, that to deliver in such reasonable time " is as much a part of his contract as to deliver them in good condition." Rathbone vs. Neal, 4 Ann. 567; Murrell vs. Dixey, 14 Ann. 298.

Hence we hold that delivery after the lapse of reasonable time is as much a defective execution of the contract as delivery in bad condition; and that the authorities referred to, are applicable to such a case. We thus assimilate our law, on this interstate and international subject, to the general law of other commercial States, and adapt it to the peculiar circumstances surrounding such contracts, which, in many cases readily suggested, render putting in default impracticable.

In this particular case, however, the necessity for default is destroyed by another well-considered line of authorities holding that the acknowledged inability of the party to comply with his contract dispenses with the necessity of putting him *in morâ*. 7 M. 218; 8 La. 522; 9 Rob. 377; 2 Ann. 957.

Such inability is acknowledged and proclaimed in the answer of defendant.

Rehearing refused.