### No. 9065
### Orleans

**H. T. COTTAM AND COMPANY, INC., Appellant v. ILLINOIS CENTRAL RAILROAD CO.**

(October 19, 1925, Opinion and Decree.)
(November 16, 1925, Rehearing Refused.)

*(Syllabus by the Court.)*

1. **Louisiana Digest—Carriers of Passengers and Goods—Par. 137.**
Where goods are lost or damaged under an interstate contract of affreightment, the liability of the carrier is for the

full actual loss or damage of such property at the time and place of destination. Recovery for the resale profits on such goods, had same been delivered, will not be allowed.

Appeal from Civil District Court, Division "C". Hon. E. K. Skinner, Judge.

This is a suit for the recovery of the loss due to defendant's failure to safely carry and deliver goods to point of destination. There was judgment for plaintiff in part and plaintiff appealed asking for an increase in the amount allowed.

Judgment affirmed.

Dart, Kernan and Dart, of New Orleans, attorneys for plaintiff, appellant.

Lemle, Moreno and Lemle, of New Orleans, attorneys for defendant, appellee.

BELL, J. The plaintiff, a wholesale grocery company at New Orleans, sues the defendant railroad company for recovery of $1,473.76, representing the loss claimed to have been sustained as a result of the defendant's failure to safely carry and deliver certain goods, consisting mostly of candy, from Chicago, Peoria, Memphis and St. Louis, to point of destination New Orleans. There were seven shipments, and the total claim for losses aggregated the above amount, but at the original trial of this case plaintiff reduced its claim for damages on the first shipment by $47.23, thus making the net amount claimed $1,426.53.

The answer admits the shipments, as alleged in the petition, but denies all other allegations for want of sufficient information. Further answering, the defendant avers that the shipments were interstate shipments; that the bills of lading covering same were issued in conformity with the Act of Congress known as the Cummings Amendment; that the only damage which plaintiff could recover would be the value of the lost or damaged goods at the place of destination, to-wit, New Orleans, Louisiana, at the time said shipments should have been delivered there.

Defendant admits that the shipments in question were damaged, but contends that plaintiff can only recover the cost price of the damaged or lost merchandise, plus such freight as was paid thereon, that is, the total replacement value which the merchandise would have had in the car at point of destination, if the contract of carriage had been properly performed. There is no dispute that this value totaled $1,074.35, the amount for which the judge a quo rendered judgment in favor of plaintiff. Defendant contends that the judgment covers all possible damages which can be legally recovered, and therefore should be affirmed. Plaintiff, as appellant, seeks an amendment of the judgment so as to increase the amount allowed by $352.15, the amount of profit which could have been realized as the resale value, that is to say, the price at which the plaintiff could have sold the goods at their reasonable wholesale cash value in New Orleans. Plaintiff bases their resale value upon the price obtained by it for similar goods sold in New Orleans at the time of the loss.

The sole question for determination is: "What is the proper measure of damages for the loss sustained?" That the shipments were interstate and were made under regulations found in the Cummings Amendment of March 4, 1915, is beyond dispute. That part of the Cummings Amendment which is pertinent and relevant to this case, reads as follows:

"And any such common carrier railroad or transportation company, so receiving property for transportation, from a point in one state, territory or District of Columbia, to a point in another state or territory * * * shall be liable to the lawful holder of such receipt or bill of lading * * * for the full actual loss, damage, or injury, to such property caused by it, or by any such common carrier."

Defendant admits that notwithstanding the stipulations printed in the bills of lading issued herein, and which provide that

"the amount of any loss or damage for which any carrier is liable shall be computed upon the basis of the value of the property * * * at the place and time of shipment", the ruling made in C. M. & St. P. R. R. vs. McCaull-Dinsmore Co., 253 U. S. 97, 98, upholding the Cummings Amendment, prevails, and that therefore it must be conceded that defendant is liable within the terms of the amendment, that is, "for the actual loss, damage, or injury to such property". But plaintiff, in the instant case, contends for more than the full actual loss, damage, or injury to the property described in its petition, and prays for not only the full value thereof, had the contract been performed, but for the profits which it would have realized if the the property had been delivered and had been actually sold. It is argued on behalf of the plaintiff that this is exactly what was held in the McCaull-Dinsmore Company case, above cited. Our careful examination of that opinion does not lead us to such a conclusion. The effect of that decision —the Chief Justice dissenting—was to set aside a ruling by the Interstate Commerce Commission, said commission holding that the Cummings Amendment did not operate to invalidate the standard clause in bills of lading which limit liability to such values as obtained at the place and time of shipment rather than to those values shown to have existed—as under the Common Law— at place and time of delivery. The commodity involved in that case was a shipment of grain, with the natural result that the market value of the grain at the place where and at the time when delivery should have been made, was taken as the basis of settlement rather than that basis provided in the full bill of lading.

The market value at New Orleans, which plaintiff would now recover from the defendant, is one which plaintiff itself, as the exclusive wholesale dealer in the goods lost, would arbitrarily establish in resale made to local retailers.

In Sutherland on Damages, 4th Edition, Vol. 4, p. 4178, Par. 1098, is the following:

"The retail price of property for sale is not the standard by which value is to be determined. Where a quantity of merchandise is sued for, the retail price would be unjust, for the merchant in fixing that price takes into consideration not only the first cost of the goods, but store rent, clerk hire, insurance and probable amount of bad debts, and adds to all of these a percentage or profit.

* * *

"The owner must be entitled to recover at such rate as he would have to pay in the nearest market where a like quantity could be bought to replace the property taken."

We find no difficulty in applying to the instant case the plain language found in the Cummings Amendment, as above quoted. Ample authority, based upon the soundest reasoning, and responsive to every appreciation of justice and equity, impels us to adopt the contention of the defendant herein. In Silverman vs. St. Louis I. M. & S. Ry. Co., 51 La. Ann. 1786, 51 South. 447, it was held that the measure of recovery for goods damaged in transit was the difference between the value of the goods in their damaged state and their value at place of destination, had they been delivered in proper condition. In the present case, defendant would do as much, indeed more, by treating the goods as totally damaged and by offering their full value at place of destination, as though wholly undamaged. In the case just cited, plaintiff sought recovery not only of the cost price but ten per cent advance on values at time of shipment, also rent, clerk's hire, and twenty-five per cent loss of profit on goods which he would have sold, and also personal expenses and loss of time. Affirming the judgment appealed from and which denied such claims, the Supreme Court of

this State, among other points observed, said:

"We do not understand that in case of loss or damage of part of a lot of assorted goods, the carrier is bound to purchase the whole consignment at the shipper's price, with expected profits added."

This is tantamount to what we are asked to do in the case now before us. Inasmuch as plaintiff is seeking to recover on its resale profits to the extent of thirty-seven per cent, it might be here noted that no special damages have been pleaded or proven, unless such proof is to be inferred from testimony on behalf of plaintiff to the effect that the undamaged portion of the shipments here involved was sold to unnamed parties at such prices.

In the light of the Cummings Amendment, the interstate contract of affreightment is simply one for indemnification to the holder of the bill of lading "for the full actual loss, damage, or injury to such property" as was lost or damaged in whole or in part. The goods in the present case being treated as wholly lost, the total damage or injury to them at the time and place at which they should have been delivered is such value or such price as the plaintiff would have to pay for similar goods at New Orleans, plaintiff being—as the facts show in this case—the sole agent for such goods at New Orleans. In other words, what would have been plaintiff's buying price, not selling price, of such goods, at New Orleans? The evidence establishes that there was no wholesale buyer of such goods in New Orleans, except the plaintiff, who bought not at New Orleans, but at the point of shipment involved in this case. However, there are innumerable buyers of such goods in New Orleans, buying exclusively of plaintiff, and if plaintiff's contention should here prevail, the effect would be to enlist defendant as an additional customer in plaintiff's New Orleans trade. We cannot give such effect to the contract. There is no proof that the goods in question had been sold by plaintiff before or while in transit, or that they formed parts of any contracts which plaintiff was bound to fulfill upon due date of delivery at New Orleans. There is nothing to show that plaintiff had contracted for the resale of these goods upon expectation of their timely delivery by the defendant.

Only such damages should be allowed as were reasonably contemplated at the time of the contract, in the absence of fraud or bad faith.

Defendant relies, in support of its contention, upon the well considered case of P. McCoy Fuel Co. vs. Illinois Central Railroad Co., 2 Series, 2 Fed. 287. Our examination of this authority, which we find fully applicable to the case at bar, states our appreciation of the law applicable to contracts of affreightment governed by the Cummings Amendment. In that case, defendants contracted to carry a certain carload of coal, weighing 88,700 pounds, from a point in Illinois to Minneapolis, Minn. On arrival at the place of delivery, it was found that 5,000 pounds of coal had been lost in transit. At the time, the value of the coal in carload lots in Minneapolis was $5.75 per ton, plus freight. The retail price of the same coal in Minneapolis was $9.70 per ton. Plaintiff was a coal dealer making purchases in carload lots from time to time, as necessity required, and had sufficient coal on hand for his needs until the arrival of the next carload of the same kind which should be purchased. The court held that plaintiff was only entitled to recover $5.75 per ton, plus freight. The opinion, in part, reads as follows:

"The basic thought in such case is that the plaintiff should be made whole. If he has sustained loss or damage he should be compensated by receipt of the proper equivalent in money.
* * *

"The contention that plaintiff is entitled to recover the amount which he would be required to pay to replace the coal, which in this case would be the price at retail, is equivalent to a contention that the plaintiff is entitled to recover the amount for which, if he had this lost coal, the same could be sold at retail. Reason and authority both are against recovery upon such a basis. This would involve a price which would include the price of unloading the coal from the car, reloading the same on trucks and wagons, hauling and delivering, insurance, collection, bad checks, overhead expenses, profits, and perhaps other items. Plaintiff has no right under the circumstances to sell missing coal to the defendant at any such price when none of these items are involved in the transaction."

In supplemental brief, counsel for plaintiff calls the court's attention to the case—among other authorities of Berje vs. T. & P. R. R. Co., 37 La. Ann. 468. In that case the suit was for damages in delay in delivering cotton shipped from Shreveport and from several places in Texas. Plaintiff claimed the loss incurred in replacing 887 bales of cotton, and for expenses for reclassing, reweighing, the loss of interest on capital invested, and for the loss of market on 307 bales. These items were allowed and the Supreme Court, in affirming the judgment, noted that the claim was not for any injury to the cotton as delivered, but simply for delay in its transportation, and that the plaintiff was not seeking to recover hypothetical losses, but those actually incurred. The judgment was predicated on the observation that the plaintiff had a right to expect his cotton at or near the fixed date; that his contracts with others were made on that expectation, and when disappointed, he had to go on the market and buy in order to replace that which defendant had contracted to deliver. The court particularly noted that the item was not for loss of profits but for an outlay of money, saying "the whole theory of damage is based on indemnity, and the indemnity here asked is of money expended in buying cotton which the plaintiff would not have had to buy if the defendant had delivered his cotton in a reasonable time".

We are unable to see how the application of the above authority can be made to the case before us.

We are of the opinion that the judgment appealed from is correct, and should be affirmed.

It is therefore ordered that the judgment herein appealed from be and the same is hereby affirmed, at plaintiff's cost in both courts.