OVERTON, J.
 

 This is a suit to recover $3,882.24, with legal interest thereon from judicial demand until paid. This amount is the alleged value of two shipments of cotton, aggregating 42 bales. The cotton was delivered to defendant for shipment at Choudrant, La., on September 20,1929, and.'bills of .lading of that date were issued by defendant, /showing that the cotton was consigned to shipper’s order, New Orleans, La., notify Anderson, Clayton & Co., the plaintiff herein.. After the cotton had been loaded and inspected by defend7 ant, and the car containing .it closed and sealed, the cotton was destroyed by fire, while still at Choudrant. The main defense is that defendant is not liable, because the destruction of the cotton was caused by fire concealed in it at the time of its delivery to defendant.
 

 The cotton was ginned in the neighborhood of Choudrant. It was delivered to . defendant on September 20, 1929, and, about noon of the same day, was loaded in one of defendant’s box cars. There was no' fire in or about the station during the loading of the cotton. The spark arresters of .all locomotives that passed the depot while the cotton was there were in good order. At 3 o’clock on the afternoon of the day the cotton was loaded, defendant’s agent went into
 
 *765
 
 the box car, inspected and checked each 'bale of cotton, closed and sealed the car, and issued the bills of lading. The car remained in place, awaiting shipment. At 3 o’clock the next morning defendant’s agent was called to the depot by an alarm of fire, and discovered that the car was on fire on the inside. The fire destroyed the cotton.
 

 On several occasions during the ginning season of the year in which the cotton was burned, cotton was baled with fire concealed on the inside of the bale. In the present shipment one of the bales intended for shipment was not delivered, but thrown aside before delivery, because it was detected that it was on fire on the inside.
 

 When cotton is baled with fire concealed in it, the fire may smolder for two or three days before it reaches the outside. During this period, or, at least, during practically all •of it, no smoke comes from the bale. However, the odor of fire in it, which seems to be a strong odor, may (be detected for some hours before the fire reaches the surface of the bale.
 

 When the bills of lading were delivered to the shippers, drafts were drawn by them on plaintiff and attached to the bills, and were on their way to plaintiff when the fire occurred. Plaintiff paid the drafts and received the bills. Later, plaintiff brought this suit. It is urged by defendant, though not particularly stressed, that, as the. drafts were paid and the bills procured after the fire, the ownership of the cotton at the time of its destruction was in the shippers, and that the claim for the cotton did not pass by the transfer of the bills. We think, however, that the claim did pass to plaintiff upon the payment of the drafts. Plaintiff was entitled to either the cotton or its value.
 

 In approaching the liability of defendant for the loss of the cotton, it is advisable to ascertain whether the shipment was an interstate or an intrastate shipment to learn 'by what law it was governed—whether by the act of Congress, in connection with the common law, or by the civil law, as estáblished in this state. The shipment was from one point in this state to another point in the state, but the shipment, in order to reach its destination over defendant’s railway, had to go from the point of its origin to Vicksburg, Miss., and thence some distance through the state of Mississippi until it re-entered the state of Louisiana to reach New Orleans, its point of destination. It will therefore be observed that, for a considerable distance, the shipment went through the state of Mississippi as well as through the state of Louisiana. Under these facts the shipment was interstate commerce. Hanley v. Kansas City S. Ry. Co., 187 U. S. 617, 23 S. Ct. 214, 47 L. Ed. 333; Western Union Telegraph Co. v. Speight, 254 U. S. 17, 41 S. Ct. 11, 65 L. Ed. 104. It is therefore controlled by the act of Congress, interpreted in connection with the common law. Chicago & N. W. R. Co. v. C. C. Whitnack Produce Co., 258 U. S. 369, 42 S. Ct. 328, 68 L. Ed. 665.
 

 There is nothing in the bill of lading, nor would there seem to be anything in the act of Congress, which either enlarges or contracts defendant’s liability. Under the common law, the rule governing the liability of a common carrier is as follows:
 

 
 *767
 
 “The liability of the common carrier by law, is, as has been seen, an unusual and extraordinary one, based upon considerations of public policy which have survived the wonderful change in the circumstances under which they first arose. By that law the common carrier is regarded as a practical insurer of the goods against all losses of whatever kind with the exception of (1) those arising from what is known as the act of God, and (2) those caused by the public enemy; to which in modern times, have been added (3) those arising from the act of the public authority, (4) those arising from the act of the shippers, and (5) those arising from the inherent nature of the goods.” Hutchinson on Carriers (3rd Ed.) § 265. See, also, Elliot on Railroads, vol. 4, p. 605, § 2201.
 

 Defendant does not contend that it is relieved from liability by virtue of any one of the first three exceptions, and obviously It is not. As to the fourth exception, which comprises those losses arising from the act of the shipper, defendant is not liable, if the shippers delivered to it cotton with fire smouldering and concealed on the inside of any bale in the shipment, which caused the loss. While the evidence points rather strongly to the hypothesis that the cotton was destroyed by reason of the fact that the .shippers delivered a bale with fire concealed in it, of which neither they nor defendant had knowledge, nevertheless this does not .appear with* legal certainty. The evidence, which is circumstantial, does not exclude ■every other reasonable hypothesis as to the cause of the loss except the hypothesis that it was occasioned in the manner advanced, namely, by the delivery of what is known as a fire bale, or that it was occasioned by any other act of the shippers. As to defendant’s nonliability by virtue of the fifth exception to the general rule, which comprises losses arising from the inherent nature of the goods, it does not appear, and there is no reason to hold, that the nature of cotton in bales is such as to make it subject to spontaneous combustion. Hence, as the burden of proof was on defendant, defendant having received the cotton, to show that the loss was occasioned by one of the five causes named, and having failed to do so, defendant is liable for the loss. 10 O. J. p. 373, § 576.
 

 Were we to hold that the shipment was intrastate commerce, and therefore governed by the civil law, as established in this state, the result would not be different. Article 2754 of the Civil Code provides that:
 

 “Carriers and watermen are liable for the loss or damage of the things entrusted to their care, unless they can prove that such loss or damage has been occasioned by accidental and uncontrollable events.”
 

 Under this article it is necessary for the carrier to prove that the loss was occasioned by “accidental and uncontrollable events” in order to escape liability. This involves proof of the cause of the agency that occasioned the loss. Here the proof does not show with legal certainty the origin or cause of the fire. In the absence of such proof, the loss is imputed to the fault of the carrier. Lehman, Stern
 
 &
 
 Co. v. Morgan’s Louisiana & Texas R. & S. S. Co., 115 La. 1, 38 So. 873, 70 L. R. A. 562, 112 Am. St. Rep. 259, 5 Ann.
 
 *769
 
 Cas 818; Dejean v. Louisiana Western R. Co., 167 La. 111, 118 So. 822.
 

 The trial court rendered judgment in favor of plaintiff for $8,578.73, based on the value of the cotton at the point of the origin of the shipment on the day of the fire. Plaintiff, in its answer to the appeal, asks that the judgment be increased to $3,723.56, the value of the cotton at New Orleans, which was the point of destination, after deducting the freight therefrom.
 

 “The general rule is that, when goods delivered to a carrier for shipment are lost in transit, the carrier will be liable for the market value of the goods at the place of destination at the time when delivery of the goods should have been made, less the freight charges to the point of destination if they have not been paid.” 10 C. J. § 606, p. 305.
 

 The difficulty is that the evidence does not show the value of the cotton, less the freight, at New Orleans, on the day delivery should have been made, although it shows its value, less the freight, at New Orleans, on the day of the fire, which was several days prior to the time the cotton could have been expected to reach New Orleans. As defendant has urged no objection to the amount of the judgment rendered against it, and as judgment, at least, for lack of proof, cannot be rendered in accordance with the prayer of plaintiff’s answer to the appeal, the judgment will be affirmed.
 

 The judgment is affirmed.
 

 O’NIELL, C. J., absent.