**157 So. 733**

**AMERICAN COTTON CO–OPERATIVE ASS'N v. NEW ORLEANS & VICKS-BURG PACKET CO., Inc.**

**No. 32607.**

Oct. 29, 1934.

Rehearing Denied Nov. 26, 1934.

St. Clair Adams and St. Clair Adams, **Jr.,** both of New Orleans, for appellant.

M. A. Grace, Edwin H. Grace, Daniel H. Grace, and Milton C. Grace, all of New Orleans, for appellee.

ODOM, Justice.

The American Cotton Co-operative Association delivered to the New Orleans & Vicksburg Packet Company, Inc., a common carrier, 295 bales of cotton at Hard Times Landing on the Mississippi river at Newellton, La., for shipment on the steamer Tennessee Belle from Newellton to New Orleans. After bills of lading were issued, but before the cotton was loaded on board the steamer, 268 bales of it were destroyed by fire. The present suit is to recover the value of the cotton destroyed. Plaintiff's demands were rejected by the trial court, and it appealed.

The facts are not disputed. The origin of the fire is unknown, or at least not explained. Plaintiff relies on article 2754 of the Civil Code, which says that: "Carriers and waterman are liable for the loss or damage of the things entrusted to their care, unless they can prove that such loss or damage has been occasioned by accidental and uncontrollable events."

Plaintiff having proved that the cotton was destroyed by fire while in the hands of the carrier, and the carrier having failed to prove that the loss was occasioned by accidental and uncontrollable events, under the above article of the Code and under the holding in such cases as Dejean v. Louisiana Western R. Co., 167 La. 111, 118 So. 822, and Anderson, Clayton & Co. v. Y. & M. V. R. Co., 174 La. 762, 141 So. 453, 455, the case would be with plaintiff but for a clause in the bill of lading specifically exempting the carrier from liability on account of loss occasioned by fire. That clause provides that the cotton is "to be delivered with reasonable dispatch, in like good order, the danger of explosion, navigation, fire, collision and unavoidable accidents excepted."

The carrier specially pleaded as a defense to the action that it was exempted from liability on account of loss by fire under the plain terms of the bill of lading, and alleged that the fire was not due to its negligence.

Counsel for defendant carrier rely mainly on the case of Borneman & Co. v. New Orleans, M. & C. R. R. Co., 145 La. 150, 81 So. 882, 883. In that case the plaintiff brought suit on bills of lading issued by the defendant company in the state of Mississippi for the transportation of cotton from Houston, in that state, to New Orleans, La. The cotton was destroyed by fire, and one of the defenses urged was that there was a clause in the bill of lading exempting the carrier from liability in case the cotton was destroyed by fire. It was held that this defense was good, the court saying:

"The risk of fire having been excepted, and the loss having been by fire, and no negligence on the part of the defendant company having been shown, the defendant company is not liable."

We may state here that no negligence on the part of the carrier was shown in the instant case. It had a watchman at the landing where the cotton was stored ready for shipment, whose duty it was to guard the cotton against fire. He testified that the fire originated about 1:30 a. m., and that during the night he went to where the cotton was stored about once each hour. After making one of his rounds and while in his tent, he looked through a window and saw that the cotton, or part of it, was in flames. He could not tell how the fire started. He was apparently careful, and exercised due diligence in watching the cotton. He was the only witness present when the fire originated. Under the circumstances, it cannot be said that the carrier was negligent. In fact, it is not contended by counsel for plaintiff that the carrier was guilty of negligence. Their contention in oral argument was, and that in their brief is, that the stipulation in the bill of lading exempting the carrier from liability on account of loss by fire is contrary to law and public policy, and therefore null. They base their right to recover solely upon the proposition that the carrier failed to show that the loss was due to an accidental and uncontrollable event.

It is argued by learned counsel for plaintiff that the Borneman Case cited, supra, has no application here, for the reason that in that case the court had under consideration a bill of lading which called for an interstate shipment, whereas in the case at bar the shipment was intrastate; that in the cited case the court considered and decided only the question whether the Carmack Amendment (Act Cong. June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 595 [see 49 USCA § 20 and note]) was preclusive of such a fire risk clause.

In that case it was plaintiff's contention that the Carmack Amendment did preclude such clause, but the court held against the contention citing 10 C. J. 136.

The so-called Carmack Amendment referred to (paragraph 11), which relates to interstate shipments only, provides that a common carrier, to which any property is delivered for shipment, shall be liable to the holder of any bill of lading "for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, *and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company*

*from the liability hereby imposed."* (Italics ours.)

Following the adoption of this amendment, and especially in view of the last above quoted clause thereof, controversies frequently arose as to whether carriers could limit or qualify their liability by special contract with the shipper, and, if so, to what extent. In all cases it was conceded that such right, if any, as the carriers had to limit their liability depended upon the provisions of that amendment. There was considerable diversity of opinion, especially in the state courts, on these points, but all doubt upon these questions was settled by the Supreme Court of the United States in 1913. In the case of Missouri, K. & T. R. R. Co. v. Harriman Bros., 227 U. S. 657, 33 S. Ct. 397, 401, 57 L. Ed. 690, the court said:

"The liability imposed by the statute is the liability imposed by the common law upon a common carrier, and may be limited or qualified by special contract with the shipper, provided the limitation or qualification be just and reasonable, and does not exempt from loss or responsibility due to negligence" —citing Adams Express Co. v. Croninger, 226 U. S. 491, 33 S. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257.

As we have already noted, the Carmack Amendment to the Hepburn Law expressly provided that a common carrier "shall be liable * * * for any loss, damage, or injury to such property caused by it" or any connecting carrier, and further stipulated that "no contract, receipt, rule, or regulation shall· exempt such common carrier * * * from the liability hereby imposed."

It was held by some courts that the last above quoted clause contained in the amendment prohibited common carriers from limiting or qualifying their liability by contract with the shippers. But the United States Supreme Court held in the case cited that under the provisions of the act the liability of the carrier might be so limited or qualified, provided the limitation or qualification be just and reasonable and does not exempt from loss or responsibility due to negligence.

It will be noted that the court said in the case cited above that the "liability imposed by the statute is the liability imposed by the common law upon a common carrier." In the case of Anderson, Clayton & Co. v. Y. & M. V. R. Co., supra, this court quoted the following from Hutchison on Carriers (3d Ed.) § 265, relating to the liability of carriers under the common law:

"By that law the common carrier is regarded as a practical insurer of the goods against all losses of whatever kind with the exception of (1) those arising from what is known as the act of God, and (2) those caused by the public enemy; to which in modern times have been added (3) those arising from the act of the public authority, (4) those arising from the act of the shippers, and (5) those arising from the inherent nature of the goods."

The law in Louisiana, as established by article 2754 of the Civil Code, is no more rigid and no more exacting of common carriers than is the common law as expressed by the Carmack Amendment, and no reason has been suggested, and we can think of none, why, if common carriers may limit or qualify their liability by contract with the shippers under the common law, they cannot do the same

thing under our civil law. There is neither constitutional nor statutory prohibition against such agreements.

Act No. 94, p. 101, of 1912, which is an act to "make uniform the Law of Bills of Lading," provides in section 3 that "a carrier may insert in a bill, issued by him, any other terms and conditions, provided that such terms and conditions shall not—(a) Be contrary to law or public policy." Section 10 of the same act reads as follows:

"Except as otherwise provided in this Act, where a consignor receives a bill and makes no objections to its terms or conditions at the time he receives it, neither the consignor nor any person who accepts delivery of the goods, nor any person who seeks to enforce any provision of the bill, shall be allowed to deny that he is bound by such terms and conditions, as far as they are not contrary to law or public policy."

The argument that a stipulation in a bill of lading providing for an intrastate shipment, limiting the liability of the carrier, is contrary to the civil law, as established by article 2754, is refuted by the holding in the case decided by the United States Supreme Court above cited, because, if the carrier may limit or qualify his liability under the Carmack Amendment by contract with the shipper, there would seem to be no reason why he may not do likewise under the civil law.

In the United States Supreme Court cases cited above, the court had under consideration the question whether the liability of common carriers as established by the Carmack Amendment (which the court said was the liability imposed by the common law) could be *limited* or *qualified* by special contract between the shipper and the carrier. It was held that the carriers' liability could be thus limited. The bills of lading under consideration in those cases limited the liability of the carrier only as to the value of the goods shipped or the amount which might be recovered in case the goods were lost, or, in other words, limited the extent of liability. In the instant case, the shipper agreed that there was to be no liability on the part of the carrier in the event the goods were destroyed by fire. The principle involved is the same. If a carrier is permitted to limit or qualify, by contract with the shipper, the extent of his liability in case the goods are lost, he may contract against any liability at all in case the goods are lost on account of a stated cause. If a carrier may limit his liability to any degree, he may exclude all liability with the consent of the shipper. The difference as to liability is one of degree only.

As a general rule, parties should be held to the terms of the contracts which they accept, and they may contract as they please, provided the cause of the contract is lawful. A person has a right to control his own affairs and to make such contracts in relation to his property as he may see fit, provided such contract is not contrary to public policy. "Agreements legally entered into have the effect of laws on those who have formed them." Civ. Code, art. 1901. The "cause" of a contract is unlawful "when it is forbidden by law [or] contra bonos mores (contrary to moral conduct) or to public order." Civ. Code, art. 1895. The contract entered into by the shipper and the carrier in this case exempting the carrier from liability is in no sense contrary to moral conduct, nor is it contrary to public order or policy.

■ It is settled beyond controversy that a carrier cannot, by contract with the shipper, exempt himself from liability from his own or his servants' negligence. Such contract would be contrary to public policy, and is illegal. Adams Express Co. v. Croninger, supra.

The exemption clause in this bill of lading does not unconditionally relieve the carrier from liability on account of loss by fire. With that clause in the bill, the shipper could recover if the loss was due to the fault of the carrier. But the burden would be upon the shipper to show the fault or negligence. The effect of that clause is merely to shift the burden of proof as to the cause or origin of the fire from the carrier to the shipper. Without such clause in the bill, the burden would be upon the carrier to show that the occasion of the fire was an accidental and uncontrollable event. With such clause in the bill, the shipper might recover if he could show that the fire was due to the carrier's negligence. Such clause is not a contract against the carrier's negligence.

In Maxwell & Putnam v. S. P. R. R. Co., 48 La. Ann. 385, 19 So. 287, it was held, to quote paragraph 1 of the syllabus, that:

"A stipulation, in a bill of lading for the transportation of cotton in bales by steamboat and a railroad as a connecting carrier for hire, that neither shall be responsible for damage which shall be occasioned by fire, does not exonerate either from responsibility for such damage as shall result from fire that is occasioned through the fault or ordinary negligence of the agents, servants, or employees of the carrier."

The doctrine that carriers may limit their liability for loss by the contract of affreightment has been repeatedly recognized by this court. In Maxwell & Putnam v. R. R. Co., supra, the court said at page 398 of 48 La. Ann., 19 So. 287, 292:

"The right of carriers to thus limit their liability has been often recognized in other jurisdictions, and the rule has been adopted and frequently applied by this court." Citing New Orleans Mut. Insurance Co. v. R. R. Co., 20 La. Ann. 302; Roberts v. Riley, 15 La. Ann. 103, 77 Am. Dec. 183; Thomas v. The Morning Glory, 13 La. Ann. 269, 71 Am. Dec. 509; Price v. The Uriel, 10 La. Ann. 413; Oakey and Hawkins v. Gordon, 7 La. Ann. 235; Van Horn v. Taylor, 2 La. Ann. 587, 46 Am. Dec. 558; and Peters v. R. R. Co., 16 La. Ann. 222, 79 Am. Dec. 578.

The court then stated: *"Recognizing defendant's right to thus restrict its liability,* some of the adjudications of this court on the liability resulting from a contract of safe carriage will be appropriate."* (Italics ours.)

In the case of McHenry Horse Exchange v. Ill. Cent. R. R. Co., 148 La. 49, 86 So. 649, plaintiff sued the carrier for the value of a mare shipped under a bill of lading which contained the following clause:

"The railroad company shall not be liable for delay in transit or for the loss or death or injuries to the live stock unless the same is caused by the negligence of the railroad company, its agents or employees."

The court said with reference to such limitations:

"Such limitations are not uncommon in bills of lading. They are valid, and have been

recognized as binding on the parties by this court on several occasions."

For the reasons assigned, the judgment appealed from, rejecting plaintiff's demands, is affirmed.