This suit involves the question of what is the proper measure of damages to be assessed against a common carrier for the loss of part of the goods which constituted an interstate shipment. The facts of *Page 419 
the case are succinctly set out in the brief of defendant as follows:
"Plaintiff contracted with defendant for the interstate transportation of four containers of medicine to a customer in Mexico City who was to pay fourteen hundred and forty dollars for the lot, or three hundred sixty dollars per container, freight included. In removing these containers from plaintiff's place of business, defendant's employees broke one, thereby causing the loss of its entire contents; defendant thereupon requested and received from plaintiff an identical container of medicine to replace the broken one, and the shipment was carried to destination under the original contract of carriage, delivered to the consignee and payment of the full purchase price made to plaintiff.
"Plaintiff promptly made claim upon defendant for its loss by submitting an invoice for three hundred sixty dollars, the amount for which it had billed (and which it had received from) the consignee of the shipment. Defendant admitted its liability to the extent of plaintiffs actual loss and declined payment at the figure named by plaintiff on the ground that this was not plaintiff's cost and therefore did not represent the true measure of its actual loss. Plaintiff made no claim or showing of special damages, but insisted that this was the identical price made to its local customers as well as to the consignee of the broken container (which is admitted by defendant) and, although admitting that this amount included its profit, refused to divulge the cost to it of the lost medicine. Being thus effectually prevented from making tender of the amount it believed to be due, defendant could only decline payment of the claim in full, and this suit followed."
Plaintiff sought judgment for $360 (the price for which it had sold the destroyed goods), and recovered that amount, subject, however, to a credit of $3.52 for freight charges. Defendant has appealed.
It is agreed by both parties that the measure of plaintiffs recovery is to be governed by the Cummins Amendment to the Interstate Commerce Act, which provides that in case of loss, damage or injury to property which is the subject of carriage, the carrier "shall be liable * * * for the full actual loss, damage, or injury to such property." Act of. March 4, 1915, c. 176, 38 Stat. 1197, 49 U.S.C.A. § 20(11).
It is defendant's contention that, under the circumstances of this case, the "full actual loss" specified by the statute means the cost of the article to the claimant, and that there should be no consideration given to the price for which the article might have been sold.
In his argument, counsel for defendant first points to the case of Illinois Cent. R. Co. v. Crail, 1930, 281 U.S. 57, 50 S.Ct. 180, 181, 74 L.Ed. 699, 67 A.L.R. 1423. There plaintiff purchased in transit a carload of coal in which a 5,500 pound deficiency was found to exist upon delivery; the deficiency was replaced with coal purchased for the same price in wholesale lots. Plaintiff contended that the measure of damage should be the retail value of the undelivered coal, which included the cost of delivery to his customers. He had not contracted to resell any of the coal when the car arrived. The Court held that under the circumstances peculiar to the case, the more accurate measure of damage of the shortage would be the wholesale price, since it was capable of replacement, and was in fact replaced, in the course of the consignee's business from purchases made in carload lots at wholesale market prices without added expense. The Court said:
"There is no greater inconvenience in the application of the one standard of value than the other, and we perceive no advantage to be gained from an adherence to a rigid uniformity, which would justify sacrificing the reason of the rule, to its letter. The test of market value is at best but a convenient means of getting at the loss suffered. It may be discarded and other more accurate means resorted to, if, for special reasons, it is not exact or otherwise not applicable. See Wilmoth v. Hamilton, 3 Cir., 127 F. 48, 51; Theiss v. Weiss, 166 Pa. 9, 19, 31 A. 63, 45 Am.St.Rep. 638; Pittsburg Sheet Mfg. Co. v. West Penn Sheet Steel Co., 201 Pa. 150, 50 A. 935; Williston on Contracts, §§ 1384, 1385. In the absence of special circumstances, the damage for shortage in delivery by the seller of fungible goods sold by quantity is measured by *Page 420 
the bulk price rather than the price for smaller quantities, both at common law, see Morgan v. Gath, 3 Hurl. C. 748; Avery v. Willson, 81 N.Y. 341, 37 Am.Rep. 503, and under section 44 of the Uniform Sales Act. Likewise, we think that the wholesale market price is to be preferred as a test over the retail when, in circumstances like the present, it is clearly the more accurate measure. * * *"
Counsel also directs our attention to the case of H. T. Cottam Co. v. Illinois Cent. R. Co., 3 La. App. 240, decided by this court. The plaintiff in that case sued the carrier for recovery of the loss sustained as a result of defendant's failure to safely carry certain goods. Judgment was rendered for plaintiff in the lower court for the cost price of the damaged or lost merchandise, and plaintiff sought before us an amendment of the judgment, so as to increase the amount allowed to the price at which it could have sold the goods at their reasonable wholesale case value at the destination. We denied plaintiff recovery for its anticipated profits, because there was no proof that the goods in question had been sold by plaintiff before or while in transit, or that they formed part of any contract which plaintiff was bound to fulfill upon the date of delivery at the destination. We said:
"* * * The evidence establishes that there was no wholesale buyer of such goods in New Orleans, except the plaintiff, who bought not at New Orleans, but at the point of shipment involved in this case. However, there are innumerable buyers of such goods in New Orleans, buying exclusively of plaintiff, and if plaintiff's contention should here prevail, the effect would be to enlist defendant as an additional customer in plaintiff's New Orleans trade. We cannot give such effect to the contract. There is no proof that the goods in question had been sold by plaintiff before or while in transit, or that they formed parts of any contracts which plaintiff was bound to fulfill upon due date of delivery at New Orleans. There is nothing to show that plaintiff had contracted for the resale of these goods upon expectation of their timely delivery by the defendant."
Defendant's counsel also cites the case of Silverman v. St. Louis, I. M. S. R. Co., 51 La. Ann. 1785, 26 So. 447, 450, which he contends is authority for the proposition that a carrier is not expected, in the case of loss or damage, to purchase the lot at the shipper's price with anticipated profits added. The Silverman case has no application here. The shipment consisted of clothing, etc., made up largely of shopworn and second-hand goods, and plaintiff sued not only for the cost price, but also for ten per cent advance on values at time of shipment, rent, clerk's hire, and twenty-five per cent loss of profit on goods which he would have sold, and also for personal expenses and loss of time. The freight car in which the goods were loaded was broken into by an unauthorized person, and eight of the thirty-six boxes in the shipment were opened and some depredations committed upon the goods. In denying plaintiff's claim, the Court used the following expressions:
"These being the facts disclosed by the evidence, we find no principle of law upon which to predicate a judgment for the plaintiff. It may be conceded that the defendant was at fault for leaving plaintiff's property in an insecurely fastened and isolated car, with no one to watch it. Nevertheless, the plaintiff cannot recover, without proving what, if any, injury this negligence of the defendants has caused him.
"The preponderance of evidence leads to the conclusion that plaintiff's goods were neither lost nor damaged. As far as we can see, there was no sufficient reason to have prevented his taking possession of them on the morning of October 5th, and if, in doing so, he had been subjected to trouble and expense, in collecting and repacking them, the defendant would have been liable therefor. He, however, refused at that time, and has since refused, to receive the goods, or any part of them, or to have anything to do with them; and the defendant was obliged to accept the alternative of taking such steps as seemed prudent for the preservation of the goods thus left on its hands and for its own protection against the claim with which it was threatened, and it accordingly collected the goods and repacked them. We do not understand that, in case of the loss or damage of part of a lot of assorted goods, the carrier is bound to purchase the whole consignment, *Page 421 
at the shipper's price, with expected profit added."
[1] In Anderson, Clayton Co. v. Yazoo M. V. R. Co.,174 La. 762, 141 So. 453, 455, the value of a shipment of cotton which had been destroyed was involved, and our Supreme Court stated the rule for assessing damages as follows:
"The general rule is that, when goods delivered to a carrier for shipment are lost in transit, the carrier will be liable for the market value of the goods at the place of destination at the time when delivery of the goods should have been made, less the freight charges to the point of destination if they have not been paid."
[2, 3] The Anderson, Clayton Co. case was cited with approval in Bancroft v. Yazoo M. V. R. R. Co., 194 La. 115,193 So. 481, 482, as follows:
"* * * The liability of the carrier in such cases is for full actual loss of the property at the place of destination at the time delivery of the goods should have been made. Anderson, Clayton Co. v. Yazoo M. V. R. Co., 174 La. 762,141 So. 453; 10 C.J. 606, p. 395. It therefore follows that in such cases it is only necessary for the consignee to allege and prove (1) that the initial carrier received the shipment in good condition, (2) that the shipment arrived at its destination in a damaged condition, and (3) the amount of the loss."
Plaintiff contends that it is immaterial whether it had sold the medicine which defendant destroyed at a profit or a loss. Counsel argues that the price at which plaintiff had contracted to sell the goods, before turning them over to the defendant for shipment, was both the market price in New Orleans and in Mexico, the destination, and should constitute the true measure of damages, as that is the price plaintiff would have received for the goods had they been safely delivered by the defendant.
The syllabus in the case of Wilson v. Hines, 58 Utah 38, 196 P. 1007, reads:
"Where plaintiff shipper had sold to the consignee the peaches shipped at the place of shipment, he was entitled to recover as damages for delay injuring the peaches the difference between the price for which he had sold the peaches, which was their market value at the place of shipment, with freight, loading, and war tax added, and their market value in their damaged condition at destination when he was notified of their nonacceptance by the consignee."
The United States Supreme Court, in Chicago, M. St. P. R. Co. v. McCaull-Dinsmore Co., 253 U.S. 97, 40 S.Ct. 504, 64 L.Ed. 801, in adjudicating an action for the loss of a shipment of grain, said:
"* * * The rule of the common-law is not an arbitrary fiat but an embodiment of the plain fact that the actual loss caused by breach of a contract is the loss of what the contractee would have had if the contract had been performed, less the proper deductions, which have been made and are not in question here. * * *"
The Supreme Court of Alabama, in the case of Nashville, C. 
St. L. Ry. v. W. L. Halsey Grocery Co., 219 Ala. 16, 17,121 So. 16, permitted a consignee to recover the value of goods estimated at their price at the destination, rather than the price for which it had purchased them at the place of shipment. The Court said:
"* * * no duty rested upon the plaintiff to order another shipment to replace the lost goods."
In 9 Amer.Jur., Carriers, sec. 783, a summary of the law is given as follows:
"The contract price, rather than the market value of goods may constitute the proper basis for estimating the damages for their loss or injury where they are shipped under, or pursuant to, a contract of sale. * * * Where the contract price is the only evidence of the market value it should be taken as the measure of damages."
The language used in 13 C.J.S., Carriers, § 264b(1), is:
"The rule as to the measure of damages for loss of property shipped applies both in actions of tort and in actions based on breach of contract; and its operation is not affected by the fact that the shipper was permitted to substitute other animals in place of those lost, or that the live stock was to be kept for use and was not intended *Page 422 
for sale." Citing, among other cases, El Paso, etc., R. Co. v. Lumbley, 56 Tex. Civ. App. 418, 120 S.W. 1050, and H. W. Little Co. v. Atlantic Coast Line R. Co., 168 N.C. 658, 85 S.E. 18.
And in § 264e we find:
"Where property is shipped for sale at a specified price or is sold in transit, the damages recoverable are based on the contract price or on the market value at destination, according to the circumstances of the case." Citing among cases Bernet, Craft Kaufman Milling Co. v. New York, C. St. L. R. Co., Mo. App., 260 S.W. 508, which held that where more goods were manufactured to replace those lost the recovery would be cost of manufacture, but not in any event less than the contract price.
In addition to relying upon the Crail, Cottam and Silverman cases, defendant relies more strongly upon the case of Meletio Sea Food Co. v. Gordons Transports, Mo. App., 191 S.W.2d 983, and contends that the issues in the latter case are identical to those now before us. The plaintiff in that case, which was a manufacturer like the present plaintiff, replaced from its stock goods damaged by the defendant carrier. A recovery for the amount of the price at which plaintiff had contracted to sell the goods was denied, and the measure of damages was fixed at the cost to plaintiff of manufacturing the goods which replaced those that had been lost. The Meletio case, however, originated in a justice's court in Missouri and was appealed to the St. Louis Circuit Court, and finally reached the St. Louis Court of Appeals. The opinion was written by a commissioner and was concurred in by the judges of the Court of Appeals. The doctrine established in the Meletio case is contrary to that announced by our own Supreme Court and other courts deciding the cases cited by plaintiff, and our opinion is that the Melettio case should not be used as a criterion here.
Under the circumstances present in the instant case, there is a distinguishment between it and the Crail and Cottam cases. In neither of those cases had the shipper contracted to sell the goods which constituted the shipment, and the courts denied recovery for expected or anticipated profits. In addition, in the Crail case the goods were fungible, and plaintiff replaced them by purchasing other wholesale lots; furthermore, the retail price on which plaintiff's claim was premised included the cost of delivery to his customers.
[4] In the case now before us, the plaintiff, which is a manufacturer, had already sold the goods to its customer in Mexico by contract, and in line with the authorities cited by plaintiff we feel that in this case the measure of plaintiff's loss is the price which it would have received from its customer in Mexico, which price was also the market price prevailing at New Orleans, the place of origin of the shipment. There are no special circumstances in the present case to warrant a holding that the sale price, which is also the market price at destination, should be discarded and the cost of manufacture adopted as the standard of defendant's liability.
It is true that plaintiff delivered to the carrier a carboy of medicine to substitute for the one which was destroyed, but we do not think that the defendant's liability should be fixed at the amount required to reimburse plaintiff merely for the cost of manufacturing one carboy of medicine. What would be the situation if the second carboy had been lost, or even a third or fourth? Could plaintiff be required to continue to manufacture goods for the defendant at cost? Furthermore, if plaintiff's business was an extensive one it might be quite difficult to compute with exactness the cost of one carboy of medicine.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed. *Page 423