ILLINOIS CENTRAL RAILROAD COMPANY *v.* CRAIL, DOING BUSINESS AS P. McCOY FUEL COMPANY.

No. 75.   Argued January 10, 1930.—Decided February 24, 1930.

58

See also 2 F. (2d) 287; 13 *id.* 459.

*Mr. Edward C. Craig,* with whom *Messrs. Edwin C. Brown* and *R. V. Fletcher* were on the brief, for petitioner.

*Mr. Stanley B. Houck,* with whom *Mr. W. Yale Smiley* was on the brief, for respondents.

*Messrs. Frederic D. McKenney, W. F. West, S. R. Prince, A. W. Blackman, F. M. Rivinus, Charles E. Miller,*

*M. K. Rothschild, W. E. Kay, F. G. Dorety, George A. Kingsley, C. W. Wright, E. E. McInnes* and *Joseph M. Bryson,* by special leave of Court, filed a statement and suggestions in support of the petition for certiorari, on behalf of certain railroad companies, as *amici curiae.*

MR. JUSTICE STONE delivered the opinion of the Court.

In this case certiorari was granted May 27, 1929, to review a ruling of the Court of Appeals for the Eighth Circuit upon the measure of damages recoverable in a suit brought under the Cummins Amendment of March 4, 1915, 38 Stat. 1197, as amended 41 Stat. 494 [49 U. S. C., § 20(11),] against a rail carrier for failure to deliver a part of an interstate shipment of coal.

Respondent, plaintiff below, a coal dealer in Minneapolis, purchased, while in transit, a carload of coal weighing at shipment 88,700 pounds. On delivery at destination, the respondent's industrial siding, there was a shortage of 5,500 pounds. At the time of arrival, respondent had not resold any of the coal. It was intended to be, and was, added to his stock of coal for resale, but the shortage did not interfere with the maintenance of his usual stock. He lost no sales by reason of it, and purchased no coal to replace the shortage, except in carload lots. In the course of his business, respondent could and did, both before and after the present shipment, purchase coal of like quality in carload lots of 60,000 pounds or more, delivered at his siding, at $5.50 per ton, plus freight. The market price in Minneapolis for like coal sold at retail in less than carload lots was $13.00 per ton, including $3.30 freight.

The case was twice tried. On the first trial, the District Court gave judgment for the wholesale value of the coal not delivered. 2 F. (2d) 287. The Court of Appeals reversed the judgment, holding that it should have been for the retail value of the coal. 13 F. (2d) 459. Upon

retrial, the District Court gave judgment accordingly, 21 F. (2d) 831, which was affirmed below. 31 F. (2d) 111.

By the Cummins Amendment the holder of a bill of lading issued for an interstate rail shipment is entitled to recover for failure to make delivery of any part of the shipment without legal excuse, " the full actual loss, damage or injury to such property " at point of destination. *Chicago, M. & St. P. Ry. Co.* v. *McCaull-Dinsmore Co.,* 253 U. S. 97.

It is not denied that a recovery measured by the wholesale market price of the coal would fully compensate the respondent, or that the retail price, taken as the measure of the recovery allowed below, includes costs of delivery to retail consumers which respondent did not incur, and a retail profit which he had not earned by any contract of resale. But respondent contends, as was held below, that the established measure of damage for non-delivery of a shipment of merchandise is the sum required to replace the exact amount of the shortage at the stipulated time and place of delivery, which, in this case, would be its retail value, and that convenience and the necessity for a uniform rule require its application here.

This contention ignores the basic principle underlying common law remedies that they shall afford only compensation for the injury suffered, *Milwaukee & St. Paul R. Co.* v. *Arms,* 91 U. S. 489, 492; *Chicago, M. & St. P. Ry. Co.* v. *McCaull-Dinsmore Co., supra,* 100; *Robinson* v. *Harman,* 1 Exch. 850, 855; Sedgwick, Damages (9th Ed.), 25; Sutherland, Damages (4th Ed.,) § 12; Williston on Contracts, § 1338, and leaves out of account the language of the amendment, which likewise gives only a right of recovery for " actual loss." The rule urged by respondents was applied below in literal accordance with its conventional statement. As so stated, when applied to cases as they usually arise, it is a convenient and accurate method of arriving at an amount of recovery which is

compensatory. As so stated, it would have been applicable here if there had been a failure to deliver the entire carload of coal, since the wholesale price, at which a full carload could have been procured at point of destination, would have afforded full compensation, *Chicago, M. & St. P. Ry. Co.* v. *McCaull-Dinsmore Co., supra; Central of Georgia Ry. Co.* v. *American Coal Co.,* 28 Ga. App. 95; *Wendnagel* v. *Houston,* 155 Ill. App. 664; *Lake Erie, etc. R. R. Co.* v. *Frantz,* 85 Ind. App. 569; *Cutting* v. *Grand Trunk Ry.,* 13 Allen 381; *Crutchfield & Woolfolk* v. *Director General of R. R.,* 239 Mass. 84; *Smith* v. *N. Y. O. & Western Ry. Co.,* 119 Misc. Rep. (N. Y.) 506; *Yazoo & M. V. R. Co.* v. *Delta Grocer Co.,* 134 Miss. 846; *Chicago, R I. & Pac. Ry. Co.* v. *Broe,* 16 Okla. 25; *Roth Coal Co.* v. *Louisville & Nashville R. R.,* 142 Tenn. 52; *Quanah A. & P. Co.* v. *Novitt,* 199 S. W. 496 (Tex. Civ. App.), or, in some circumstances, if respondent had been under any constraint to purchase less than a carload lot to repair his loss or carry on his business, for in that event the measure of his loss would have been the retail market cost of the necessary replacement. *Haskell* v. *Hunter,* 23 Mich. 305, 309. But in the actual circumstances the cost of replacing the exact shortage at retail price was not the measure of the loss, since it was capable of replacement and was, in fact, replaced in the course of respondent's business from purchases made in carload lots at wholesale market price without added expense.

There is no greater inconvenience in the application of the one standard of value than the other and we perceive no advantage to be gained from an adherence to a rigid uniformity, which would justify sacrificing the reason of the rule, to its letter. The test of market value is at best but a convenient means of getting at the loss suffered. It may be discarded and other more accurate means resorted to if, for special reasons, it is not exact or otherwise

not applicable. See *Wilmoth* v. *Hamilton,* 127 Fed. 48, 51; *Theiss* v. *Weiss,* 166 Pa. St. 9, 19; *Pittsburg Sheet Mfg. Co.* v. *West Penn Sheet Steel Co.,* 201 Pa. St. 150; Williston on Contracts, §§ 1384, 1385. In the absence of special circumstances, the damage for shortage in delivery by the seller of fungible goods sold by quantity is measured by the bulk price rather than the price for smaller quantities, both at common law, see *Morgan* v. *Gath,* 3 H. & C. 748; *Avery* v. *Wilson,* 81 N. Y. 341, and under § 44 of the Uniform Sales Act. Likewise, we think that the wholesale market price is to be preferred as a test over the retail when in circumstances like the present, it is clearly the more accurate measure, *Brown Coal Co.* v. *Illinois Central R. R. Co.,* 196 Iowa 562; see *State* v. *Smith,* 31 Mo. 566; *Wendnagel* v. *Houston, supra,* 666, 667; *Wood Co.* v. *Chicago, Milwaukee & St. Paul Ry. Co.,* 320 Ill. 341. Compare *Heidritter Lumber Co.* v. *Central R. R. of N. J.,* 100 N. J. Law, 402, *Leominster Fuel Co.* v. *New York, N. H. & H. Ry. Co.,* 258 Mass. 149, cited as supporting the conclusion of the court below In these cases it does not clearly appear whether the consignee suffered special damage by reason of the shortage, measured by the retail price, or whether he did or could replace it at the wholesale price in the ordinary course of business.

The court below thought that the fact that the award to respondent of the expense and profit, included in the retail price to consumers, did not militate against the rule it applied, for the reason that the wholesale price, as is often the case where market price is the measure of loss, likewise included a profit over mine cost plus freight. But respondent had done every act and incurred every expense prerequisite to procuring delivery at destination. Any profit included in its market value at the stipulated time and place of arrival was, therefore, appropriately included in the measure of his loss. In this respect it is

distinguishable from the expense and prospective profit not actually incurred or earned by respondent, represented by the retail price. See *Central of Georgia R. R. Co.* v. *American Coal Co., supra; Yazoo & M. V. R. Co.* v. *Delta Grocer Co., supra,* 146. Compare *Cincinnati, N. O. & T. P. Ry. Co.* v. *Hansford,* 125 Ky. 37; *Smith* v. *N. Y. O. & Western Ry. Co., supra; Quanah A. & P. Co.* v. *Novitt, supra.*

*Reversed.*