## UNITED STATES v. WISHNATZKI et al.

District Court, S. D. New York.
June 4, 1934.

George Z. Medalie, U. S. Atty., of New York City (by David Marcus, Asst. U. S. Atty., of Brooklyn, N. Y.), for the United States.

Burt L. Smelker, of Washington, D. C., for Interstate Commerce Commission.

Henry Silverman, of New York City, for defendants Harris Wishnatzki and Daniel Nathel.

Edward S. Silver, of New York City, for defendant Albert Sroge.

WOOLSEY, District Judge.

I find the defendant Albert Sroge guilty; and the United States attorney may, on due notice, bring him before me for sentence at any time.

I do not think that the United States made out its case beyond a reasonable doubt against the defendants Wishnatzki and Nathel. Unfortunately, we have not in this jurisdiction any recognized verdict of "not proven" as they have in Scotland. Therefore, I can only find the defendants Wishnatzki and Nathel not guilty. This I do, and, consequently, they are acquitted and their bail is discharged.

I. The indictment, as found by the grand jury, herein consisted of thirteen counts.

Twelve counts alleged against each and all of the three defendants that, in breach of the provisions of title 49, United States Code, § 10 (3), 49 USCA § 10(3), they had filed false damage claims against interstate rail carriers for more than their actual damage in order to secure rebates on regularly established interstate commerce rates for transportation of vegetables in carloads.

The thirteenth count was a conspiracy count, under title 18, United States Code, § 88 (18 USCA § 88), setting forth a conspiracy among the defendants to file such false claims in breach of title 49, United States Code, § 10 (3), 49 USCA § 10(3), and alleging twelve overt acts, which consisted of the filing within this district of the twelve claims severally dealt with in the first twelve counts of the indictment.

The parties tell me that this is a test case—the first of its kind—and the object of both parties has been to have the very interesting questions of law involved determined in an unhurried fashion.

Consequently, by stipulation, they formally waived a jury and tried the case before me.

On the government's motion all the counts except the eleventh were dismissed before the end of the argument.

It is on the eleventh count—to which, as to the other counts, the defendants pleaded not guilty—and the case made by the government thereunder, that the matter was finally submitted to me, and on that record I have arrived at the decision above noted.

II. It is curious that in a criminal case, even of this kind, the question whether a crime has or has not been committed should turn on a nice question in the law of damages. But such is the fact herein.

It is necessary, however, before taking up this question of damages that I should deal with the rationale of the statute, title 49, United States Code, § 10 (3), 49 USCA § 10 (3), under which count eleven of the indictment was lodged.

III. The objective sought by the Congress in the passing of the Interstate Commerce Act of 1887, Act of February 4, 1887, 24 Stat. 379, may, for present purposes, be briefly summarized by saying that it was to make rates on interstate railway carriers definite and certain, and to prevent further discrimination, rebates and other abuses which had crept into interstate railway transportation practices, and to insure—under criminal and civil sanctions—by freight tariffs published and filed with the Interstate Commerce Commission, that freight rates were reasonable and that the same freight rates were charged to all shippers alike for identic services. Cf. Arizona Grocery Company v. Atchison, T. & S. F. Railway Co., 284 U. S. 370, 383–386, 52 S. Ct. 183, 76 L. Ed. 348.

In order that shippers might be treated fairly in the event of damage or injury suffered by their goods during transportation the so-called Cummins Amendment, Act of March 4, 1915, c. 176, 38 Stat. 1196 (49 USCA § 20), provided that shippers should recover from railway carriers their "full actual loss, damage or injury," notwithstanding attempted limitations of such recovery by bills of lading or other contracts in connection with transportation. Cf. Chicago, M. & St. P. Railway Company v. McCaull-Dinsmore Company, 253 U. S. 97, 99, 40 S. Ct. 504, 64 L. Ed. 801.

It is a necessary corollary of charging the same rates to all goods owners for identic interstate transportation services, and of paying to all goods owners for the actual loss, damage, or injury suffered by their goods in such transportation, that claims for such loss, damage, or injury should not be padded or falsely increased by the goods owners, for otherwise the goods owners would receive more than their actual loss or damage, and the carrier would receive less than the agreed fixed freight to which he was entitled.

To meet this situation, section 10 of the original Interstate Commerce Act of February 4, 1887, was modified by certain ad interim amendments, which need not be here discussed, and is now title 49, United States Code, § 10(3), 49 USCA § 10(3). So far as it is here relevant, that section reads as follows: "(3) *Obtaining lower rates by false billing, etc., or by false claim; penalty.* Any person, corporation, or company, or any agent or officer thereof * * * *who shall knowingly and willfully, directly or indirectly,* himself or by employee, agent, officer, or otherwise, by false statement or representation as to cost, value, nature, or extent of injury, or by the use of any *false bill,* * * * *account, claim, certificate,* affidavit, or deposition, knowing the same to be *false, fictitious, or fraudulent, or to contain any false, fictitious, or fraudulent statement or entry,* obtain or attempt to obtain any allowance, refund, or payment for damage or otherwise in connection with or growing out of the transportation of or agreement to transport such property, whether with or without the consent or connivance of the carrier, *whereby the compensation of such carrier for such transportation, either before or after payment, shall in fact be made less than the regular rates then established and in force on the line of transportation,* shall be deemed guilty of fraud, which is declared to be a misdemeanor, and shall, upon conviction thereof in any court of the United States of competent jurisdiction within the district in which such offense was wholly or in part committed, be subject for each offense to a fine of not exceeding $5,000 or imprisonment in the penitentiary for a term of not exceeding two years, or both, in the discretion of the court. * * * *"

IV. The background of the situation herein is as follows:

The defendants are consignees of carload lots of tomatoes. Freight is paid on the carload lots to the railroad at a rate based on a minimum carload weight of 20,000 pounds.

The individual package in which tomatoes are shipped is called a lug.

If any lugs are damaged in transit, such damaged lugs are separated from the sound lugs and are taken over by the railroad com-

pany, which makes such salvage as it can by selling them.

The sound lugs are sold by the consignees on the day of arrival in the New York City markets.

Each lug from a particular car does not bring the same price, and, consequently, for many years, it has been the custom to take the weighted average* of the sales prices of the sound lugs in a car as the basis for determining the loss by the consignee on the damaged lugs.

The result has been that when the railroad paid claims so calculated its actual out of pocket was the weighted average sales prices multiplied by the number of damaged lugs, minus the salvage realized by the railroad on its sale of the damaged lugs which it had taken over.

That is the method of dealing with each car followed for many years by the railroad company, and the goods owners here involved, Wishnatzki & Nathel.

Such a settled and habitual ·method of business dealing between parties to a situation of this kind is usually the best test of the commercial realities involved—far better than ex post facto evidence and contentions. Cf. Harris v. Morse (D. C.) 54 F.(2d) 109, 115, 116; Irving Trust Company v. Deutsch et al. (D. C.) 2 F. Supp. 971, 989.

I am dealing, therefore, with this case on the basis of the car FGEX 46735 as the unit just as if it had been the only car which had arrived at New York, on July 18, 1930, and from which the contents had been sold on July 19, 1930.

I think that this is the correct method to follow because freight was paid by the car, sales were made from the carload, the records of the sales were kept by the carload, and—a matter of the profoundest significance from the commercial point of view—claims for years had been paid on damaged lugs at prices based on the weighted average sales prices of the sound lugs in the same carload.

Consequently, I hold that, for the purposes of this case, the ambit of inquiry on the question of damages here is limited to the contents of the car FGEX 46735.

V. The Cummins Amendment, Act of March 4, 1915, c. 176, 38 Stat. 1196 (49 USCA § 20), provides that the carriers affected by the Interstate Commerce Act shall issue a bill of lading for goods received and be liable to the lawful holder of it "for the full actual loss, damage or injury" suffered by his goods.

In Chicago, M. & St. P. Railway Company v. McCaull-Dinsmore Company, 253 U. S. 97, at page 100, 40 S. Ct. 504, 505, 64 L. Ed. 801, loss caused by breach of a contract of transportation is defined by Mr. Justice Holmes, as "the loss of what the contractee would have had if the contract had been performed, less the proper deductions."

In United States v. Palmer & Parker Company et al., 61 F.(2d) 455, at page 459, the Circuit Court of Appeals for the First Circuit said, with regard to damages for breach of contract: "There is only one rule, of universal application, in such cases, and that is to give compensation for the loss suffered. Frequently, this idea is found impossible of complete attainment; perhaps generally the market value rule is found to be the nearest approach to reaching the actual loss. But the market value rule is inapplicable when, on the facts, it is not the nearest practicable approach to an ascertainment of the actual loss. Each case must be governed by its own facts. Magnin v. Dinsmore, 62 N. Y. 35, 46, 20 Am. Rep. 442."

These citations show the general theory, but inasmuch as the chancering of damages for breach of contract is necessarily based on the reconstruction by the court of what might have been, it is necessary, as is suggested in the last quotation, to have a basis of comparison which is the nearest possible measure available, for that is more likely than aught else can be to achieve the actual result

---

* A weighted average of the sales prices of sound lugs is—for example—arrived at thus:

Suppose there are 500 sound lugs in a car and they are sold in two lots of 200 and 300 respectively.

If the lot of 200 sound lugs sells for $2.25 per lug, it will bring in $450. If the lot of 300 sound lugs sells for $1.00 per lug, it will bring in $300.

That makes total receipts for the sound lugs of $750.

The weighted average would be found by dividing the total of $750 received by 500, the total number of sound lugs sold, and the result would be that the weighted average of the sales prices of the 500 sound lugs would be $1.50.

Then, if the railroad had taken over the damaged lugs, the proper claim to be put forward would be $1.50 multiplied by the number of damaged lugs.

which would have followed from the performance of a contract.

If there is a total loss of the contents of a car, or of a cargo on a ship, the court is driven to take into consideration the market value of the goods lost at the time of their expectable arrival at place of destination, deducting, of course, any charges which may be cast upon the goods owners by the contract of transportation, or the customs of the particular trade involved.

Suppose, however, there is, as we have in this case, a carload of packages all containing goods of the same character, and, on arrival, some of them are damaged and some are sound, and the sound packages are sold as near as may be to the date of arrival of the car at destination.

If one asks what is the nearest norm for measurement of the amount which would have been realized on the contract if the damaged goods had not been damaged, but had arrived and been sold in sound condition, the answer, I think, necessarily must be that the nearest norm for such measurement is the sales price at which the sound goods in that particular car sold at the time, and if they did not all sell in one lot for the same price, the weighted average of the sales prices of the several lots.

It seems to me that this is the theory which underlies what was said by Justice Stone in Illinois Central Railway Company v. Crail, 281 U. S. 57, at page 63, 50 S. Ct. 180, 181, 74 L. Ed. 699, 67 A. L. R. 1423, when, after recognizing that compensation only was the common-law rule of damages in contract cases, he said: "The test of market value is at best but a convenient means of getting at the loss suffered. It may be discarded and other more accurate means resorted to, if, for special reasons, it is not exact or otherwise not applicable."

The "special reasons" here for using, as the norm for measurement of the goods owners' damage, the weighted average of the sales prices of sound goods out of the car wherein the damaged goods were brought forward, is not only that in this case the car was habitually the unit of dealing with freight sales and damage, but also that, so far as hindsight can make out, that amount is what the damaged packages would have brought if they had been delivered sound and sold at the time when the other sound packages from that car were sold.

In other words, it is common sense—long recognized by the parties to the transaction here involved—to take the market price of the tomatoes in the car instead of a general market price of tomatoes, as the norm for measuring the goods owners' loss. And because it is the best norm it matters not whether it be greater or less than the general market price.

■■ VI. The conspiracy count of the indictment herein was dismissed on the government's motion at the end of the trial.

Some of the defendant Sroge's evidence with regard to the other defendants had been admitted under the conspiracy count, and, consequently, with that dismissed, as above noted, I have felt justified in holding only Sroge guilty under count 11.

Count 11 involves a false claim, made and certified by Sroge, in respect of a carload of tomatoes transported from Selmer, Tenn., to Jersey City, N. J., on the freight car above mentioned, FGEX 46735.

The contents of the car were delivered to Wishnatzki & Nathel in Jersey City on July 18, 1930. The car contained in all 660 standard lugs of what are called in the bill of lading "green wrapped tomatoes."

Wishnatzki & Nathel accepted 347 lugs thereof as in good condition, and rejected 313 lugs as damaged. In pursuance of the settled habit of dealing above mentioned which had obtained for many years, the 313 damaged lugs were taken over by the Pennsylvania Railroad Company and disposed of by it for its own benefit to reimburse it as much as possible for the damage claim which would follow.

The freight on the car FGEX 46735 was duly paid to the Pennsylvania Railroad Company by Wishnatzki & Nathel.

On August 13, 1930, Sroge presented in behalf of Wishnatzki & Nathel, to the Pennsylvania Railroad Company, within this district, a claim amounting to $888.92 for the loss allegedly suffered by Wishnatzki and Nathel owing to the damage to the 313 lugs rejected as above stated.

An account of sales from the car FGEX 46735 was annexed to this claim.

This account which purported to be of "Sales on Purchased Car FGEX 46735" on July 19, 1930, stated figures which showed prices obtained for the sound portion of the shipment, of which the weighted average was $2.84 per lug. It was certified therein by Sroge over his signature that on July 19, 1930, 128 of the sound lugs had been sold for $3 per lug and the rest of the sound lugs, to wit, 219 lugs, had been sold for $2.75 per lug.

The government has shown that this certificate, which was the supporting document to the Wishnatzki & Nathel claim against the Pennsylvania Railroad Company, is false, that the highest price obtained by the defendants for any tomatoes out of the car FGEX 46735 was $2.75, and that there was not any sale of any lugs out of car FGEX 46735 for $3 per lug.

The weighted average of the 347 lugs which were sold for $986.25 amounts, according to my calculation, to circa $2.60, but the precise figures are not material in a criminal case. Cf. Grand Rapids & I. R. Co. v. United States, 212 F. 577, 582 (C. C. A. 6).

I think it is clearly established that Sroge knew, or, what is the same thing, should have known, that he was falsely certifying an account sale which was to be used in support of a claim against the railroad.

It was his duty, when he was certifying such an account and using his certificate as a basis for securing a payment of money from the railroad for his employers, to know that the figures were right before he used them.

Shirking inquiry, which should be made, is not a means of escaping a scienter. Knowledge thus avoided is to be attributed to the person on whom the duty of inquiry is thus placed. Armour Packing Company v. United States, 209 U. S. 56, 28 S. Ct. 428, 52 L. Ed. 681; Spurr v. United States, 174 U. S. 728, 735, 19 S. Ct. 812, 43 L. Ed. 1150; United States v. Erie Railroad Company (D. C.) 222 F. 444, 448–449; In re David Paris (D. C.) 4 F. Supp. 878.

VII. So far as Sroge is concerned, therefore, I think it is proved beyond any doubt that he made a false claim as alleged in count 11 against the Pennsylvania Railroad; that he knew, or should have known, that the claim was false because he knew, or should have known, that no sales had been made from the car in question (FGEX 46735) at the price at which the account sales, signed by him, stated certain sales had been made.

The Pennsylvania Railroad Company, in accordance with its usual course of dealing with Wishnatzki & Nathel and relying on their account sales as true, paid the claim as presented and thus had its freight for the car FGEX 46735 decreased by more than the actual amount of the damage or loss suffered by Wishnatzki & Nathel.

The crime denounced by the statute above quoted was, therefore, completely proved as against Sroge.