RAILROAD SALVAGE OF CONN., INC. *v.* EAZOR EXPRESS, INC.

SUPERIOR COURT      NEW HAVEN COUNTY      FILE NO. 117417
AT NEW HAVEN

Memorandum filed December 30, 1971

*Sachs, Sachs & Sachs,* of New Haven, for the plaintiff.

*Shay, DelSole, Grazioso & Thompson,* of New Haven, for the defendant.

PASTORE, STATE REFEREE. The plaintiff sues for damages for losses suffered on two shipments of goods while in interstate transportation from Akron, Ohio, to Connecticut.

In 1967, the plaintiff operated four stores in Connecticut, selling a variety of general merchandise and supplies. Each of these stores had a floor covering department. On or about November 24, 1967, Goodyear Tire and Rubber Company delivered to the defendant in Akron, Ohio, on a bill of lading to the plaintiff, 1246 cartons of first quality vinyl floor tiling for delivery to the plaintiff in Orange, Connecticut, where the plaintiff operated one of its stores. On or about November 30, 1967, Goodyear Tire and Rubber Company delivered to the defendant in Akron, Ohio, on a bill of lading to the plaintiff, 112 cartons of the same type of vinyl floor tiling for delivery to the plaintiff in East Windsor, Connecticut, where the plaintiff also operated a store.

The exact dates of the arrival of these two shipments seem not too clear from the evidence, but both shipments arrived at their respective destinations either in December, 1967, or by early January, 1968. Owing to rain and freezing during transportation,

both shipments were found upon arrival to be in a damaged condition which rendered the goods worthless.

On March 6, 1970, an interlocutory summary judgment as to liability only was rendered against the defendant. On July 2, 1970, judgment was rendered in favor of the plaintiff against the defendant for part of the claim, in the aggregate sum of $8609.08, being $7940.30 relating to the Orange, Connecticut, shipment and $668.78 relating to the East Windsor, Connecticut, shipment, the action thence being severed, to be proceeded with, in respect of the remainder of the claim, without prejudice to the plaintiff's recovering any further damages to which the plaintiff might be entitled. Practice Book § 305.

On August 20, 1971, the court referred the cause on motion of the plaintiff for hearing, which hearing by stipulation of the parties filed September 8, 1971, was for the purpose of hearing and judgment in accordance with General Statutes §§ 52-434 and 52-434a, the claim for trial by jury having meantime been waived by the plaintiff.

The chief issue relates to the measure of damages. In short, the defendant contends that it is liable only for the price which the plaintiff actually paid for the goods, viz., $5.85 per carton at Akron, Ohio. The plaintiff maintains, however, that the proper measure of damages is the wholesale market value of the tiles at the point of destination, that being in Connecticut; such value was shown to be $10.35 per carton.

The parties agree that the action is based upon the Cummins amendment of the Interstate Commerce Act. 38 Stat. 1196, as amended, 49 U.S.C. § 20 (11) (1970). So far as pertinent, this provides that a common carrier shall be liable to the lawful holder of a bill of lading and that in case of loss,

damage or injury to property which is the subject of interstate carriage the carrier "shall be liable . . . for the full actual loss, damage, or injury to such property."

Courts interpreting this language have held generally that the shipper is entitled to the market value of the goods as determined at the point of destination at the time delivery should have been made, if the property has a market value at that place. See generally *Chicago, M. & St. P. Ry. Co.* v. *McCaull-Dinsmore Co.*, 253 U.S. 97, 99–100; *Gore Products, Inc.* v. *Texas & N.O.R. Co.*, 34 So. 2d 418; *Illinois Cent. R. Co.* v. *Crail*, 281 U.S. 57; note, 67 A.L.R. 1427.

The "actual loss" referred to in the Cummins amendment, "when applied to cases as they usually arise, . . . is a convenient and accurate method of arriving at an amount of recovery which is compensatory. . . . The test of market value is at best but a convenient means of getting at the loss suffered. It may be discarded and other more accurate means resorted to if, for special reasons, it is not exact or otherwise not applicable." *Illinois Cent. R. Co.* v. *Crail,* supra, 63–65. In the instant case no circumstances have been shown to make inapplicable the general rule relating to the market value of the loss at destination at the time delivery should have been made.

The plaintiff had purchased a whole warehouse quantity of vinyl tiling at a bargain price of $5.85 per carton, f.o.b. Akron, Ohio. A total of 1358 cartons had been rendered worthless when delivered in Connecticut, where the wholesale market value was not less than $10.35 per carton in quantity lots, although for some types of vinyl tiling the Connecticut market price ranged to $15.50 and, in quantities of less than 100 cartons, to $11.25 per carton.

A claim of the defendant is that the plaintiff is entitled at most to the purchase price of $5.85 per carton plus a profit of $2 per carton. On April 10, 1968, the plaintiff had invoiced the defendant at the rate of $2 per carton for "lost profits," in connection with the two shipments. To the extent that this is considered an offer of compromise, it does not appear that it was ever accepted by the defendant, and what the ultimate result of this so-called charge was is not shown. In all events the bringing of the present action, served on June 24, 1968, operated to withdraw any such offer. Also, there is no evidence that the plaintiff was under any existing contract to sell the tile at the time of the expected or actual delivery in Connecticut, and what profit the plaintiff might have made on a resale would be a matter of speculation.

The defendant has introduced an invoice of the plaintiff dated May 13, 1968, in which the plaintiff purports to charge the account of the defendant for the 1246 cartons of lost goods in connection with the Orange, Connecticut, shipment at an average of $5.98 per carton, together with freight charges and a ten-cent handling charge per carton claimed to have been incurred to ascertain the extent of the damage done to the shipment. In this connection the evidence shows that the payment made by the defendant to the plaintiff of the sum of $7940.30 in connection with the Orange, Connecticut, shipment includes reimbursement for 1246 cartons at $5.85 per carton plus freight charges connected with them, which freight charges the plaintiff had previously paid to the defendant. This payment by the defendant to the plaintiff was made on the basis previously herein stated—that any excess damages to which the plaintiff might be entitled would remain the subject of this litigation without prejudice to a further recovery by the plaintiff.

The defendant cites two cases as supporting its claim that the rule based on the market value at the place of destination at the time delivery should have been made should not be applied. In *United States v. Palmer & Parker Co.*, 61 F.2d 455, the defendant company was in the business of manufacturing veneers and lumber, with a place of business in Boston, Massachusetts. Its major business was in manufacturing with mahogany wood, importing it from Africa. A shipment of mahogany logs from Africa had been delayed in transportation. The company was not a dealer in mahogany logs for resale. It imported such logs for manufacturing and sale in various manufactured forms, and there was no real or substantial market for mahogany logs in this country. Id., 459–60. It was held that the damages were not to be tested by the market value of the mahogany logs, "as logs." Id., 463. In *F. J. McCarty Co. v. Southern Pac. Co.*, 428 F.2d 690, 692, the contract price was used as a criterion of damages because there was testimony that the type of grapes involved had no market in New York, the place of destination mentioned in the bill of lading, and that the contract price was the nearest practical approach to an ascertainment of the actual loss.

In the instant case there is no question that there existed a wholesale and retail market in Connecticut at the time delivery should have been made and for a long time previously. The plaintiff was a dealer for resale of the goods in question, and there was a definite market for the purchase and sale of them in this state.

The use of the wholesale market value at the destination at the time delivery should have been made allows the plaintiff a profit which the plaintiff would have earned if the carrier had performed its duties properly. It was an increment of value within

the contemplation of the parties. The law contemplates restoring a plaintiff to the position he would have occupied if no loss or damage had occurred. In the instant case, this appears to be the only way the plaintiff could realize its full actual loss. See *Chicago, M. & St. P. Ry. Co.* v. *McCaull-Dinsmore Co.,* 253 U.S. 97, 100. The difference in the value of the goods at point of origin and at point of destination is an appropriate element of the measure of damages. *Illinois Cent. R. Co.* v. *Crail,* 281 U.S. 57, 65.

While the plaintiff made a further purchase of similar goods some months after the purchase here involved from Goodyear Tire and Rubber Company, it does not appear that the plaintiff could have replaced the purchases at the same bargain prices at the time the goods should have been delivered in Connecticut.

The claim of the plaintiff for ten cents per carton as a handling charge must be disallowed because the evidence appears to be in the field of speculation.

A question arises as to whether any recovery by the plaintiff on the basis of the wholesale market value at the place of destination is subject to a deduction for freight charges from Akron, Ohio, to Connecticut. Since the value at destination is the basis for estimating the damages recoverable against the carrier, unpaid freight charges are an appropriate deduction from the amount awarded; thus the plaintiff is given the net value of the property at the place of destination. 13 C.J.S., Carriers, § 272, pp. 621, 622 nn.38 & 39. To omit such a deduction would grant the plaintiff more than indemnity.

There is no evidence as to the exact transportation charge per carton. An assumption can be made that the transportation charges for the 1358 cartons amount to $664.78. [Computation omitted.] On the

basis of that assumption, the further damages to which the plaintiff is entitled are computed at $7438.52. [Computation omitted.]

Accordingly, judgment may enter for the plaintiff to recover of the defendant the sum of $7438.52.