Armour **MORGAN, Plaintiff-Appellee,**

v.

**NORFOLK AND WESTERN RAILWAY CO., Defendant-Appellant.**

**No. 71–1909.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 30, 1972.

Decided Feb. 12, 1973.

Rehearing Denied March 9, 1973.

Robert J. Banks, Jr., Danville, Ill., for defendant-appellant.

C. W. Dukes and Kenneth J. Meyers, Danville, Ill., for plaintiff-appellee.

Before KNOCH, Senior Circuit Judge, and CUMMINGS and PELL, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff, a cattle feeder located near Perryville, Indiana, sued defendant railroad, alleging that it improperly handled his cattle in transporting them from South Morrill, Nebraska, to Tilton, Illinois. The issues raised in this appeal concern only two of four shipments covered by the amended complaint. Claim 3 involved 339 feeder steers shipped on March 8, 1968, and Claim 4 involved 240 feeder steers shipped on August 3, 1968.

On Claim 3, two steers were crippled on arrival and died within a week or ten days, and the balance were dirty, badly roughed up, extremely fatigued, and in need of revitalization. Plaintiff sought $25,616.25 in damages as to that shipment,[1] and the jury returned a verdict for $21,000.

As to Claim 4, three steers were found dead upon unloading and three died soon thereafter. The balance were hot, tired, gasping for breath, had their tongues hanging out, and were supposedly in a near catastrophic condition. Plaintiff sought $20,850.84 in damages for them.[2] The jury returned a verdict for the injuries sustained in this shipment in the amount of $16,500. Defendant appeals from the adverse judgment as to both shipments.

■ Defendant first argues that it was entitled to a directed verdict on the ground that plaintiff failed to prove that the defendant was negligent and that any negligence proximately caused the damages. We have carefully reviewed the record and agree with the district court that plaintiff was clearly entitled to have his case presented to the jury upon the facts adduced at the trial.[3]

Defendant also asserts that the district court should have directed a verdict in its favor because of exceptions to liability contained in the Uniform Livestock Contracts which governed the particular shipments. However, the contracts themselves provide that neither exception relied upon applies in the case of carrier negligence, which was amply proved by plaintiff.

But we agree with defendant that certain evidentiary rulings on the issue of damages require reversal and may well have resulted in a verdict far in excess of what was necessary to compensate plaintiff for his actual loss.

■ Under the court's instruction No. 20, the jury was charged in relevant part:

"If you decide for the plaintiff on the question of liability you must then fix the amount of money which will reasonably and fairly compensate him for his loss.

"The general rule is that the measure of damages for loss of property shipped is the market value at destination, and in case of injury the difference between the value at the time and place of delivery in an uninjured condition and the value and [sic] the

1. In his original complaint, plaintiff claimed damages of $8,580.40 as to this shipment.

2. The damages claimed as to the shipment subject to claim 4 in the original complaint were $7,426.15.

3. In considering whether plaintiff was entitled to have his case presented to the jury, we did not rely upon defendant's alleged violation of the 36-hour rule for confining cattle in railroad cars (45 U.S.C. § 71) because plaintiff did not cross-appeal from the district court's directed verdict in favor of defendant as to Count II of the complaint embodying that theory.

depreciated condition in which the property is actually delivered. Whether any such damages has been proved by the evidence is for you to determine. Your verdict must be based on the evidence and not upon speculation, guess or conjecture."

While this instruction comported with the general rule delineated in New York, Lake Erie & Western Railroad Co. v. Estill, 147 U.S. 591, 616–617, 13 S.Ct. 444, 37 L.Ed. 292, and followed in Illinois (Mirski v. Chesapeake & Ohio Ry. Co., 31 Ill.2d 423, 428, 202 N.E.2d 22 1964)), nevertheless, under the *Estill* case the defendant should have been permitted to adduce evidence of the ultimate price received for the cattle to contradict plaintiff's evidence as to their market value.[4] As Mr. Justice Blatchford explained (147 U.S. at p. 618, 13 S. Ct. at p. 455):

> "The plaintiffs may have received on the sale of the cattle more or less than their market value. The defendant might have brought out evidence as to what the animals were sold for by the plaintiffs, to contradict the evidence as to their market value; but the plaintiffs could not bind the defendant by the prices for which the animals were sold."

Here defendant was not permitted to elicit the going market price at which the plaintiff eventually sold the cattle. As in the *Estill* case, such evidence was admissible to show how much, if any, the market value of the cattle on arrival was depreciated by defendant's negligence.

■ Defendant contends that the market value rule should not have been applied here because it does not result in the closest ascertainment of actual loss. In Great Atlantic & Pacific Tea Co. v. Atchison, T. & S. F. Ry. Co., 333 F.2d 705 (7th Cir. 1964), certiorari denied, 379 U.S. 967, 85 S.Ct. 661, 13 L.Ed.2d

560, Judge Hastings painstakingly explained that under the "Carmack Amendment" (49 U.S.C. § 20(11)), as at common law, the measure of damages is compensation for the "full actual loss, damage, or injury" to the property caused by the carrier, and that "the market value rule is merely a method [and] it is not applied in cases where it is demonstrated that another rule will better compute actual damages." *Id.* at 708. Nevertheless, the burden of demonstrating that another rule will more closely approximate actual loss falls on the defendant. Gold Star Meat Co. v. Union Pacific R.R. Co., 438 F.2d 1270, 1273 (10th Cir. 1971); Reider v. Thompson, 197 F.2d 158, 160–161 (5th Cir. 1952); cf. Great Atlantic & Pacific Tea Co. v. Atchison, T. & S. F. Ry. Co., *supra,* 333 F.2d at 708–709. Defendant did not meet this burden.

In this case it was defendant who first suggested the market value rule be applied, and it did not demonstrate the practicability of applying another rule. It must be remembered that the "adoption [of the market value rule] is due to its simplicity in application, the probability that it comes close to actual damages in most cases and the policy that 'as against the wrongdoer, the law is willing to disregard the possibility that an award of market value at the time of the wrong may be too much.'" Great Atlantic & Pacific Tea Co. v. Atchison, T. & S. F. Ry. Co., *supra* at 708. During trial, defendant did not show "special reasons [why the market value rule] is not exact or otherwise not applicable." Illinois Cent. R. Co. v. Crail, 281 U.S. 57, 64–65, 50 S.Ct. 180, 181, 74 L.Ed. 699. Defendant's subsequent attack on the market value rule was attempted by way of proof of the price at which the cattle were ultimately sold. But as the Fifth Circuit has pointed out,

> "If there were circumstances existing which showed that the general rule of

---

4. Plaintiff argues that defendant was permitted to inquire concerning the number of cattle sold, the average weight of the steers sold, and the price per hundred- weight received for the cattle. However, the testimony as to the price was stricken by the trial court.

damages binding upon the plaintiff was not proper here because its application would result in awarding the plaintiff more than indemnity, these should have been developed and disclosed as a matter of defense. *However, if this be done by proof of the price received from a sale it is, in substance, an impeachment of the existence or amount of damages rather than the establishment of a different measure of damages."* Reider v. Thompson, *supra*, 197 F.2d at 161 (emphasis supplied).

Consequently, to impeach plaintiff's market value evidence, the defendant was entitled to elicit the price at which the cattle were ultimately sold. However, since the plaintiff. incurred additional expense for supplementary feed to revitalize the injured cattle, defendant should also elicit the amount of additional expense incurred (as well as any additional pasture time required), in order that the true probative significance of the ultimate sales price on the market value of the injured cattle can be appreciated. This should be done upon remand. In the *Estill* case, *supra*, 147 U.S. at 616, 13 S.Ct. at 454, the Supreme Court approved the proposition that "* * * both parties [are entitled] to show the condition of the animals after their arrival at their destination, in order to show how badly they were hurt by the collision." If, as defendant contends, plaintiff fed, fattened, and sold all of the injured cattle during the usual period of time and then sold them in the normal channels of commerce at the then going market price and at the same weight they would have had if they had not been injured, that would certainly have a bearing on the depreciated market value of the cattle upon arrival and could well serve to impeach the testimony of plaintiff and his expert witness as to what that value was.

We also think that defendant should have been permitted to introduce plaintiff's claim forms that had been submitted to defendant according to a provision of the Uniform Livestock Contracts. That provision, in accordance with 49 U.S.C. § 20(11), provides that as a condition precedent to recovery written claims for damages must be filed with the carrier within nine months after delivery of the property and that suits should be instituted against the carrier within two years and a day after the carrier gives written notice to the shipper that his claim has been disallowed. Since the claims were submitted prior to the existence of an actual or apparent dispute between the parties as to the validity or amounts of the claims, they are not privileged as offers of compromise. McCormick Handbook of the Law of Evidence, § 251 at p. 540 (1954 ed.). Therefore, the claims were admissible as admissions by a party. As to the third shipment, plaintiff had only claimed $4,524.80, and as to the fourth shipment, only $4,457.68. However, these claims cannot be considered as the outermost limits on the amount of damages to which plaintiff is entitled. Condakes v. Southern Pacific Company, 303 F.Supp. 1158, 1161 (D.Mass.1968); Southern Express Co. v. Couch, 157 Ark. 604, 249 S.W. 559, 561 (1923).

We have considered the other grounds raised by plaintiff in support of reversal but are not persuaded thereby.

Reversed and remanded for a new trial limited to the issue of damages alone.