**POLAROID CORPORATION, Plaintiff-Appellee,**

v.

**SCHUSTER'S EXPRESS, INC., Defendant-Appellant.**

No. 73–1195.

United States Court of Appeals, First Circuit.

Submitted on briefs Aug. 2, 1973.

Decided Sept. 17, 1973.

Charles E. Holly and Weston, Patrick, Willard & Redding, Boston, Mass., on brief for appellant.

Edwin R. Trafton, and Robert T. Oken, Boston, Mass., on brief for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

PER CURIAM.

Polaroid Corporation has brought this action against Schuster's Express, Inc., a common carrier, under the provisions of the Interstate Commerce Act, 49 U.S.C. § 20(11) [1] claiming damages arising from the hijacking of a shipment of photographic equipment entrusted to the defendant at Needham Heights, Massachusetts, on October 6, 1969, for delivery to a Polaroid warehouse at Paramus, New Jersey on October 7, 1969. Defendant appeals the granting of summary judgment on the issue of damages and the trial court's finding that Polaroid Corporation was entitled to its dealer price, rather than merely its cost of manufacturing the lost equipment. For the reasons stated below, we affirm.

Consideration of the summary judgment issue requires a somewhat detailed description of the controversy's procedural development. Plaintiff filed a claim for damages, totaling $134,490.95; this figure represents the dealer price, in case quantity, uniformly charged to all dealers purchasing from Polaroid. Following the defendant's response to plaintiff's request for admissions, plaintiff moved for summary judgment on the question of liability, pursuant to F. R.Civ.P. 56, and requested the court to ascertain what material facts on the damage issue were controverted and to order a hearing for assessment of damages. The court, faced with the defendant's admitted liability for "full actual cost", found the only disputed issue to be the measure of damages.

Plaintiff supported its claim for $134,490.95 by seven evidentiary affidavits, sworn to by its Group Controller for Operations. They itemized the dealer price value of each item for the month in which the goods were hijacked and divided the total price into cost and profit components. Defendant's reply brief contended that plaintiff was not entitled to the dealer price and questioned the accuracy of the cost component figure. It did not claim that the dealer prices were inaccurate nor that they did not represent the market value of the hijacked goods at destination. Upon the court's request, Polaroid supplied two additional affidavits respecting costs saved by the non-delivery and the facts supporting the assumption that all the items in the stolen shipment would have been sold within a relatively short period.

The defendant in no way contested these affidavits, either by introducing conflicting evidentiary affidavits as required by Rule 56(e) or by form of affidavit, pursuant to Rule 56(f), explaining why facts necessary to justify its opposition to summary judgment could not be supplied. Neither did defendant take advantage of discovery procedures to ascertain information solely within the knowledge of plaintiff nor did defendant request a continuance for discovery techniques.

Supported by plaintiff's affidavits the court found that the goods were in great demand, nothing remaining "but to unload the goods at the distribution center and to stock and take orders for them." Since the manufacturer had earned its profit prior to the theft, the court awarded damages in the amount of $133,989.30, deducting the uncontested cost savings from the uncontested dealer price.

Defendant's assertion that the trial court erred in not allowing the damages to be computed by a jury is without merit. If costs and not market value were the measure, the defendant might well have been entitled to a jury trial. However, the validity of dealer prices as a measure of damages is clear-

---

1. 49 U.S.C. § 20(11) : "Any common carrier, railroad, or transportation company subject to the provisions of this chapter receiving property for transportation from a point in one State . . . to a point in another State . . . shall be liable . . . for the full actual loss, damage or injury to such property caused by it . . . ."

ly a question of law for the court to decide.

DeCato v. Travellers Life Insurance Co., 379 F.2d 796 (1st Cir. 1967), upon which the defendant relies, rejected summary judgment in a dispute over the accuracy of figures based upon destroyed records, a fact pattern quite distinct from the instant case. Indeed, that case noted: "Just because a party chooses to litigate does not necessarily mean that there is a dispute as to damages." *DeCato, supra,* 379 F.2d at 799.

Defendant contends that it was not obliged to refute plaintiff's detailed proof of the immediate sales value of the hijacked equipment, relying upon Adickes v. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), a § 1983 conspiracy case in which the Court reversed summary judgment even though the opposing party had not come forward with independent evidence. However, the Court based its holding upon the fact that the moving party had failed to carry its burden of showing the absence of any genuine issue of fact; once this initial burden is met the Court stated quite specifically that to avoid conceding facts alleged by the moving party, the opposing party would have to come forward with an affidavit either under Rule 56(e) or (f). *Adickes, supra,* 398 U.S. at 159–160, 90 S.Ct. 1598.

The Advisory Committee Note of 1963 on subdivision (e) clarifies this point:

"Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented. And summary judgment may be inappropriate where the party opposing it shows under subdivision (f) that he cannot at the time present facts essential to justify his opposition." 6 Moore's Federal Practice ¶ 56.01 [14], at 2022.

Unlike the situation in *Adickes,* Polaroid's affidavits did establish the absence of a genuine issue, thereby bringing Rule 56(e) into play.

As to the proper measure of damages, courts have generally held that "full actual loss" under 49 U.S.C. § 20(11) is equivalent to market value at destination. *See* Chicago, M. & St. P. R. v. McCaull-Dinsmore Co., 253 U.S. 97, 40 S.Ct. 504, 64 L.Ed. 801 (1920) and Gore Products v. Texas & N. O. R., 34 So.2d 418 (La.App.1948). There is some authority for limiting recovery to replacement cost where a manufacturer ships substituted goods to his buyer. Meletio Sea Food Co. v. Gordons' Transports, 191 S.W.2d 983 (Mo.App.1946). However, mere replacement costs deprive a manufacturer of expected profit which he is on the verge of earning and do not compensate him for what he "would have had if the contract [of delivery] had been performed . . .", the test enunciated by the Supreme Court. *McCaull-Dinsmore, supra,* 253 U.S. at 100, 40 S.Ct. at 505.

The *Meletio* exception, in any case, is not relevant to the Polaroid situation. Hijacked goods, unlike those destroyed, ultimately compete with the manufacturer and, therefore, no true replacement is possible. Moreover, Polaroid is the sole manufacturer of the types of products lost; all the purchasers of the hijacked goods would have had to purchase them from Polaroid.

The special circumstances of Illinois Central R. v. Crail, 281 U.S. 57, 50 S.Ct. 180, 74 L.Ed. 699 (1930), in which the court limited recovery to replacement costs, is also inapplicable. In that case, the shipper was merely a distributor adding nothing to the value of the coal he purchased for resale; no sales were lost by the shortage and no coal was purchased to replace that lost. In addition, the shipper claimed his retail price which included costs not incurred, such as the cost of delivery to consumers. If the entire shipment had been lost or the coal repurchased to carry on business,

the usual rule would have been applied. *Crail, supra,* 281 U.S. at 64, 50 S.Ct. 180.

The fact that the plaintiff was transporting goods to its own warehouse and not to a buyer does not change the measure of damages. The affidavits established a more than reasonable likelihood that the hijacked goods would have been sold at the claimed market price. *See* Tri-State Produce Co. v. Chicago, B. & Q. R., 104 F.Supp. 452 (N.D.Iowa 1952). Only speculative profits, not profits *per se,* are denied.

In Baltimore & O. C. Terminal R. v. Becker Milling Mach. Co., 272 F. 933 (7th Cir. 1921), popular milling machinery was lost en route to the plaintiff's warehouse. The court rejected the contention that manufacturer's cost would be adequate compensation and allowed the shipper to recover the selling price minus sales commissions.

> "If the manufacturer should be restricted to his actual manufacturing costs, it would be possible for him to spend thousands of dollars manufacturing an article, thousands to sell it for a profit and then lose the entire investment as a result of carrier's negligence in failing to perform the service it had agreed to perform under its bill of lading contract. . . . No patron expects the carrier to give such service purely on a cost basis and, likewise, carriers cannot expect manufacturers to operate their equipment solely for the benefit of the carrier . . . ." J. Miller, Law of Freight Loss and Damage Claims (3rd ed. 1967).

The correct measure of damages, on the facts of this case, for loss of manufactured goods which are in great demand shipped by a manufacturer to his warehouse is the wholesale selling price less any cost savings.

Judgment affirmed.