EASTMAN KODAK COMPANY, a New Jersey Corporation, Plaintiff,

v.

WESTWAY MOTOR FREIGHT, a Colorado Corporation, Defendant.

Civ. A. No. 88–K–1765.

United States District Court,
D. Colorado.

Nov. 27, 1990.

---

**38.** *See* Oil Shale Advisory Board to Secretary of Interior, *Interim Report, II. Background Information,* (Feb. 1, 1965).

Stephen E. Kapnik, Lohf, Shaiman & Ross, Denver, Colo., for plaintiff.

Joseph J. Mellon, Mellon, Harris & Cooksey, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Before me is plaintiff's motion for summary judgment and defendant's request for postponement in order to permit discovery. The matters are at issue and fully briefed. Oral argument is not needed.

This is a civil action brought under the Interstate Commerce Act, 49 U.S.C. § 11707, (liability of common carriers under receipts and bills of lading). Jurisdiction is found under 28 U.S.C. § 1337. The parties raise the following issues: 1) is Kodak entitled to its "wholesale" or "net" price, including profit, as damages for the goods destroyed by Westway; 2) may this matter be decided on Kodak's motion for summary judgment; 3) does Westway deserve a postponement under FRCP 65(f) to permit discovery or to obtain affidavits?

In May, 1987, the plaintiff, Eastman Kodak Company, shipped a load of sensitized photographic material from its production facility in Colorado. The load was shipped on a truck operated by defendant, Westway Motor Freight, a common carrier. The load was destined for a Kodak regional distribution center in California. When it arrived, most of the load was destroyed.

On the bill of lading, the parties agreed that the temperature in the trailer carrying the photographic material would not raise above 50 degrees F. When the truck was opened in California, the temperature in the trailer was "well above 50 degrees." The parties agree the heat caused the loss. The parties do not dispute Westway's liability.

■ The issue is, what is the measure of Kodak's damages? Kodak argues it is entitled to its "invoice" or "wholesale catalogue" price as the measure of damages. Kodak explains its price is driven by market conditions and is commercially competitive. The price it seeks as damages also includes the profit Kodak would have earned had the goods arrived in good condition. Westway proposes, as Kodak's measure of damages, the "replacement cost" of the goods destroyed: Kodak's cost of remanufacturing the goods.

The Interstate Commerce Act, 49 U.S.C. § 11707(a)(1), provides,

Any common carrier providing transportation or service ... [is] liable to the person entitled to recover under the bill of lading ... for the *actual loss* or injury to the property caused by (1) the receiving carrier ...

(emphasis added). Kodak defines "actual loss" as the market value of undamaged property, less salvage value, and less expenses saved as a result of the loss. According to Kodak, "actual loss" also includes the profit Kodak would have made on the damaged goods.

Kodak bases its argument on *Polaroid Corp. v. Schuster's Express, Inc.*, 484 F.2d 349 (1st Cir.1973): a case whose facts track this case down to the kind of goods lost. The difference is that in *Polaroid* the goods were high-jacked from the carrier and probably re-entered the stream of commerce. Here, the goods overheated and were destroyed. The court in *Polaroid* concluded, "actual loss" is generally calculated as "equivalent to market value at destination," *Id.* at 351. (citing cases).

Kodak produced affidavits from its comptroller, Kenneth Mangan. Mangan prepared two invoices for the load of product destroyed. They total $623,518. After

deducting the value of salvageable goods and shipping fee, Mangan values Kodak's damages claim at $610,000.

Westway argues "actual loss" should not include all of Kodak's profits. Instead, damages should be based on Kodak's cost of remanufacturing the items destroyed. By its own admission, Westway acknowledges market value is the customary measure of recovery. Westway, however, claims exception to the general rule because of circumstances unique to this case.

Westway points out that Kodak cannot point to any loss of future sales, or diminished customer expectations. Second, Westway informs the court that the load at issue was sent from a Kodak manufacturing facility to a Kodak distribution facility. Third, Westway points out that the destroyed goods where replaced and reshipped to the California distribution facility within weeks after the loss.

For authority, Westway cites *Illinois Central R. Co. v. Crail*, 281 U.S. 57, 50 S.Ct. 180, 74 L.Ed. 699 (1930). *Illinois Central* involves a railroad which lost a portion of a coal dealer's order of coal. The wholesale price of coal was $5.50 per ton plus freight; the coal fetched a retail price of $13.00, freight included. The dealer claimed the retail price constituted damages for his actual loss. The Court calculated the dealer's damages as the wholesale price of the coal.

Westway cites this case because some of the facts parallel this case. The coal dealer, like Kodak, quickly replaced the lost coal, and the delivery shortage did not interfere with his sales. But the facts of the cases quickly diverge. First, Kodak is not merely a dealer or middleman in the photographic supply business. The effort involved in replacing the goods is not merely contracting for more product; Kodak must remanufacture the goods, and this could likely produce shortages down the line.

Second, regardless of the role the respective plaintiffs occupy in the market, the relief actually granted in *Illinois Central* was the market value of the goods at their intended destination. The parties in *Illinois Central* fought over retail versus

wholesale prices; the court found the market value of the coal was the wholesale price. The Court pointed out that the wholesale price includes dealer profit which reflects value added to the product by the dealer:

> [T]he wholesale price, as is often the case where market price is the measure of loss, likewise included a profit over mine cost plus freight. But [dealer] had done every act and incurred every expense prerequisite to procuring delivery at destination. Any profit included in its market value at the stipulated time and place of arrival was, therefore, appropriately included in the measure of his loss.

*Illinois Central*, 281 U.S. at 65, 50 S.Ct. at 182. The place of arrival is California. Kodak supplied proof in the form of affidavits that its catalogue price accurately reflects the market value of the goods; almost all of its product quickly leaves its distribution facility for retail markets. Kodak merely seeks the wholesale price and profit it would have earned from the value Kodak added to the product.

Westway hopes for mileage from the Court's equivocating dicta, "The test of market value is at best but a convenient means of getting at the loss suffered. It may be discarded and other, more accurate means resorted to, if, for special reasons, it is not exact or otherwise not applicable." *Id.* at 64, 50 S.Ct. at 181. As for "special reasons," Westway again points to the quick replacement of the destroyed load by Kodak. Westway calculates damages as the cost of remanufacturing the goods plus any additional costs like overtime which are directly attributable to the remanufacturing.

Kodak's response is simple. Why should Kodak be penalized by losing profit on a load of product ready for sale simply because Kodak owns an advanced emergency production network designed to cope with serious losses? For support, Kodak cites J. Miller, *Law of Freight and Damage Claims* (3d edition 1967) (cited in *Polaroid*, 484 F.2d at 352):

> If the manufacturer should be restricted to his actual manufacturing costs, it

would be possible for him to spend thousands of dollars manufacturing an article, thousands to sell it for a profit and then lose the entire investment as a result of carrier's negligence in failing to perform under its bill of lading contract ... [C]arriers cannot expect manufacturers to operate their equipment solely for the benefit of the carrier ...

Simply remanufacturing the lost product will not adequately compensate Kodak for its actual loss. According to Kodak management, sensitized photographic materials have a limited useful life. Kodak employs a sophisticated distribution network to deliver fresh product according to seasonal and regional demands.

Westway raises two more "special reasons" why market value should not be used. First, the load was shipped between one Kodak facility and another. The First Circuit addressed this situation in *Polaroid* and found this fact not compelling. Second, Westway points out that the goods in *Polaroid* were not destroyed and would eventually compete against the replacement product Polaroid eventually produced. I fail to see how this fact changes the application of *Polaroid*. At best, it is a distinction without a difference. Overall, the court's reasoning in *Polaroid* is sound. "[T]he validity of dealer prices as a measure of damages is clearly a question of law for the court to decide." *Polaroid*, 484 F.2d at 350–51. The goal of § 11706 is to restore the shipper to its original position. As a matter of law, market value at the place of destination, minus expenses saved by the loss and salvage, plus interest is Kodak's measure of damages.

Knowing the legal standard, the next issue is, can this dispute be resolved on Kodak's motion for summary judgment? Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d

265 (1986). The Court clarifies earlier decisions [1].

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Id.* The moving party is responsible for informing the court of its claim and demonstrating the absence of a genuine issue of material fact. But the movant need not support its motion with materials "negating the opponents claim." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553.

Before a court will find that a dispute about a material fact is genuine, there must be sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Hence, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The party must come forward with specific facts.

■ Thus, the moving party is entitled to summary judgment, as a matter of law, when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. Westway admits, in its brief, that market value is the general rule of recovery. It bases its case on the argument that Westway's situation presents "special reasons" why this court should recognize an exception to the general rule. Westway bears the burden of convincing this court that "special reasons" exist. It has not done so.

Westway supplies this court with no materials of its own which likens Kodak's position to the situation of the coal dealer in *Illinois Central*. Likewise, there are no

---

**1.** *See: Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

materials provided which show trade in photographic materials deserves treatment as an exception to the market value rule.

Westway's principal ammunition is its confidence that it will cross-examine Kodak's affiants, expose inconsistencies, and produce massive recantations, but I can save Westway the trouble. In making a decision, a trial judge must construe the evidence and draw all inferences in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. Hence, I find: 1) Kodak does not sell "virtually 100%" of its product, Vance affidavit, par. 10; 2) Kodak's equipment is not used 100% of the time to meet regular production demands, Vance affidavit, par. 19; almost all of Kodak's product shipped to California is pre-sold, or sold within a "few weeks," LeBrun affidavit, par. 7.

Throughout its brief, Westway clings to the belief that Kodak must demonstrate proof of lost sales to customers before it recovers its profit. The danger, according to Westway, is Kodak will reap a "double profit" because it might not have sold the goods Westway destroyed. Westway cites no authority for its demand that proof of lost sales must accompany Kodak's claim. In general, Westway presents no affirmative evidence of its own that a market value measure of damages is inappropriate to these facts. Hence, there is no reason to doubt that the materials Westway destroyed were not in great demand, or that Kodak was not about to sell those goods at a profit. Because Westway failed to meet its burden under *Celotex*, Kodak's motion should be granted.

Westway requests this court to postpone its ruling, however, to allow depositions to be taken from Kodak officials. It cites FRCP 56(f):

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application ... or may order a continuance to permit affidavits to be obtained or depositions to be taken ...

Although the complaint was filed over two years ago (October, 1988), Kodak's lawyer postponed trial and discovery for personal reasons. The parties have engaged in a protracted discovery dispute including motions to compel, protective order, and a motion for reconsideration. But Westway has not yet deposed Kodak officials.

Westway, however, filed no affidavits as Rule 56(f) requires. Further, Westway has offered no specification of the data which such discovery is expected to achieve. In absence of such specification, I am inclined to believe that the request is made merely to forestall the inevitable. In an excess of caution, however, I will postpone ruling until February 1, 1991 and direct that such discovery, if any, or the filing of counter affidavits, if any, be realized by that date.

Accordingly, IT IS ORDERED that defendant's request for postponement is granted to February 1, 1991.